529 S.E.2d 600

**Judy BANFI, Executrix of the Estate of Bertha Cunningham, Deceased, Plaintiff Below, Appellant,**

v.

**AMERICAN HOSPITAL FOR REHABILITATION, a Corporation, and Manjula Narayan, M.D., Defendants Below, Appellees.**

No. 26659.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2000.

Decided April 24, 2000.

Thomas M. Plymale, Plymale Law Office, Wayne, West Virginia, Attorney for the Appellant.

William L. Mundy, Debra A. Nelson, Mundy & Adkins, Huntington, West Virginia, Attorneys for the Appellee, American Hospital for Rehabilitation.

D.C. Offutt, Jr., Sonja L. Carpenter, Offutt, Fisher & Nord, Huntington, West Virginia, Attorneys for the Appellee, Manjula Narayan, M.D.

PER CURIAM:

The appellant herein, and plaintiff below, Judy Banfi [hereinafter "Banfi"], as executrix of the estate of Bertha Cunningham [hereinafter "Mrs. Cunningham" or "the decedent"],[1] appeals from an order entered February 25, 1999, by the Circuit Court of Cabell County. In that order, the court granted summary judgment to the appellees herein, and defendants below, American Hospital for Rehabilitation [hereinafter "American Hospital"] and Manjula Nàrayan, M.D. [hereinafter "Dr. Narayan"],[2] based upon Banfi's failure to produce expert testimony in support of her claims of medical negligence asserted against these defendants. On appeal to this Court, Banfi complains that the circuit court erred by (1) requiring her to produce expert testimony regarding the defendants' culpability for a fall Mrs. Cunningham sustained while she was a patient of American Hospital and (2) granting summary judgment when there exists a genuine issue of material fact concerning the circumstances surrounding the decedent's fall. Having reviewed the parties' arguments, the appellate record, and

---

1. For further discussion regarding the party plaintiff in this proceeding, and successors thereto, see *infra* note 9 and accompanying text.

2. For ease of reference, American Hospital and Dr. Narayan will also be referred to collectively as "the defendants."

the pertinent authorities, we find that the circuit court did not err by ruling that expert testimony is required to determine the defendants' negligence in failing to restrain Mrs. Cunningham and in diagnosing and treating her injuries following her fall. We also find, however, that the circuit court erroneously decided that our prior decision in *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389 (1997), does not apply to Banfi's claim that the defendants were negligent by not preventing Mrs. Cunningham's fall. In addition, we conclude that the circuit court improperly granted summary judgment to the defendants on the fall prevention claim when there exists a genuine issue of material fact as to this incident. Accordingly, we affirm, in part, and reverse, in part, the order of the Circuit Court of Cabell County and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The majority of facts underlying the instant appeal are generally not disputed by the parties. Mrs. Cunningham suffered a stroke in 1992. After treatment therefor at St. Mary's Hospital, she was transferred to American Hospital, on September 9, 1992, as a result of her weakened condition.[3] Upon her admission to American Hospital, Mrs. Cunningham was evaluated by various medical personnel. Dr. Narayan,[4] to whose care Mrs. Cunningham was assigned upon her admission, observed that Mrs. Cunningham's rehabilitation would focus on improvement of her safety awareness, judgment, and communicative abilities. The doctor also informed Mrs. Cunningham that she was not permitted to get out of bed without assistance and instructed hospital staff to transfer Mrs. Cunningham in all of her movements. Dr.

Narayan did not, however, specifically order direct observation or restraint of Mrs. Cunningham. Similarly, Laurie Mills [hereinafter "Nurse Mills"], a registered nurse employed by American Hospital, evaluated Mrs. Cunningham's condition at the time of her admission and noted that the patient's safety would be a concern. Finally, a physical therapy initial evaluation, conducted by Mary Alice Pullen, who was also a hospital employee, indicated that Mrs. Cunningham was impulsive, had problems with safety awareness and balance, infrequently stumbled, and would require assistance in all of her ambulatory activities.

Thereafter, on September 14, 1992, Nurse Mills found Mrs. Cunningham lying on the floor of her room's bathroom around 3:50 a.m. The accounts of how Mrs. Cunningham came to be in this position vary. Morris Cunningham [hereinafter "Mr. Cunningham"], Mrs. Cunningham's husband, testified that, according to his wife, she had repeatedly requested assistance to travel to the bathroom, but her calls were not answered. She then walked to the bathroom unassisted and fell. This account allegedly is corroborated by a social worker for St. Mary's Hospital where Mrs. Cunningham was taken later that morning for treatment of a fractured right hip, which was surgically repaired the next day.[5] By contrast, Nurse Mills reported that she heard a noise and, upon going to Mrs. Cunningham's room, found her on the floor of her bathroom. The nurse also indicated that Mrs. Cunningham was apologetic because she knew she had been instructed not to get out of bed without assistance, but claimed that she did not call for help because she did not want to bother anyone.[6]

As a result of Mrs. Cunningham's resultant injuries, Mr. Cunningham, as his wife's

---

**3.** At the time of her transfer, Mrs. Cunningham was 77 years old.

**4.** Dr. Narayan was not a true hospital employee but rather a "contract physician" of that facility. During the events relevant to the instant appeal, however, Dr. Narayan served as American Hospital's Medical Director of Rehabilitation.

**5.** Dr. Narayan examined Mrs. Cunningham at 8:20 a.m. on the morning of her fall and ordered her transfer to St. Mary's Hospital approximately two and one-half hours later.

**6.** The record indicates that, when Mrs. Cunningham was located on the floor, the side rails of her bed were in a raised position.

attorney-in-fact and next friend,[7] filed a civil action in the Circuit Court of Cabell County on September 13, 1994, alleging that American Hospital and Dr. Narayan had been negligent in their care and treatment of her and that they had failed to provide for her safety. Following Mrs. Cunningham's death,[8] her action was pursued by Judy Banfi [hereinafter "Banfi"], as executrix of the decedent's estate.[9] More specifically, Banfi contends that the defendant hospital was negligent in failing to adequately train its personnel to provide for Mrs. Cunningham's safety by restraining and supervising her and in not instructing its personnel regarding proper treatment of injuries. Likewise, Banfi avers that Dr. Narayan negligently failed to order Mrs. Cunningham's restraint and supervision and to diagnose and treat her injuries following her fall. Following discovery, both defendants filed motions for summary judgment alleging that they were entitled to judgment as a matter of law because Banfi had not produced an expert witness to testify as to the applicable standard of care and the defendants' failure to meet said standard, as required by W. Va.Code § 55–7B–7 (1986).[10] By order entered February 25, 1999, the circuit court:

> f[ound] that this case is governed by the West Virginia Medical Professional Liability Act as found in Chapter 55, Article 7b of the West Virginia Code.
>
> . . . .
>
> Plaintiff in this case has produced no expert to establish that either American Hospital for Rehabilitation or Manjula Narayan, M.D. breached the appropriate standard of care in their treatment of Bertha Cunningham, Plaintiff's decedent.
>
> Plaintiff alleges that the Defendants breached the appropriate standard of care

by failing to restrain, or order the restraint, of Bertha Cunningham.

> Based upon the pleadings and evidence produced in this case, this Court is of the opinion that the decision of whether to restrain the patient or not is a medical decision, which requires the order of a physician.
>
> The Court further f[ound] that there is no evidence that any physician ordered restraint, and that to prevail upon this case, the Plaintiff would need to show that the failure to order restraint for Bertha Cunningham was a deviation from the applicable standard of care.
>
> It is further uncontested that the side rails on Bertha Cunningham's bed were raised when Ms. Cunningham got out of bed and subsequently fell.
>
> The issue or issues of negligence against the respective defendants involve complex medical knowledge regarding the issuance of restraints or in the case against Dr. Narayan, the possible aggravation of a previous injury due to delay in treatment. Both of these matters require expert testimony.
>
> This case does not involve negligence of such an apparent nature that it could be resolved without the use of expert testimony, therefore the Court is of the opinion that the case of *McGraw v. St. Joseph's Hospital,* [200 W.Va. 114] 488 S.E.2d 389 (W.Va.1997) does not apply.

Accordingly, the court granted the defendants' motions for summary judgment, ruling:

> A. This case is a medical malpractice action involving complex medical decisions requiring the use of an expert under West Virginia law to provide the Court and jury

---

**7.** At the time the complaint was filed, Mrs. Cunningham was not competent to prosecute her lawsuit.

**8.** The record indicates that Mrs. Cunningham died on October 18, 1994, as a result of lung cancer.

**9.** Thereafter, Ms. Banfi also passed away, and Mr. Cunningham, as administrator of his wife's estate, succeeded Ms. Banfi as the plaintiff herein. For ease of reference, and consistent with the style of this case in the circuit court, we will

continue to refer to the plaintiff/appellant in this matter as "Banfi."

**10.** W. Va.Code § 55–7B–7 (1986) provides, in pertinent part, that "[t]he applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. . . ."

with the appropriate standard of care to be met by the Defendants; [and]

B. The Plaintiff has failed to provide any expert to testify on her behalf with regard to the standard of care and therefore cannot establish a prima facie case against either Manjula Narayan, M.D. or American Hospital for Rehabilitation.

From this order, Banfi appeals to this Court.

## II.

### STANDARD OF REVIEW

■ The standard of review governing our decision of this case is two-fold. In reviewing the circuit court's order generally granting summary judgment, we employ a plenary review. " 'A circuit court's entry of summary judgment is reviewed de novo.' Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997). However, with respect to the specific question of whether expert testimony is required to prove the claims of negligence asserted against the defendants, we review the circuit court's decision for an abuse of discretion. "A trial court is vested with discretion under W. Va.Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal." Syl. pt. 8, *McGraw*, 200 W.Va. 114, 488 S.E.2d 389. Having stated the applicable standards of review, we now consider the parties' arguments.

## III.

### DISCUSSION

Banfi presents two assignments of error: first, that the circuit court erred by ruling that the negligence alleged in this case cannot be resolved without expert testimony, and second, that summary judgment is not proper in this case given the genuine issue of material fact regarding the occasion of Mrs. Cunningham's fall. For ease of discussion,

we will consider these allegations as they relate to the three main claims asserted against the defendants: (1) failure to restrain Mrs. Cunningham, (2) failure to prevent her fall, and (3) improper diagnosis and treatment of her resultant injuries.

Governing our consideration of these three claims are general principles of law which dictate when a plaintiff is required to produce expert testimony in order to prove his/her claim of medical malpractice.[11] Claims of professional negligence arising from health care practices are generally governed by the Medical Professional Liability Act, W. Va. Code § 55–7B–1, *et seq.* Section 7 of this Act addresses the need for expert testimony in such cases: "[t]he applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses *if required by the court* . . . ." W. Va.Code § 55–7B–7 (emphasis added). In our recent decision, *McGraw v. St. Joseph's Hospital,* we interpreted W. Va.Code § 55–7B–7 as granting a lower court the discretion to require, or not to require, expert testimony in cases of medical negligence. *See* Syl. pt. 8, 200 W.Va. 114, 488 S.E.2d 389.

■ Despite the discretionary power of circuit courts in these cases,

" '[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.' Syl. pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964)." Syl. Pt. 1, *Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991).

Syl. pt. 5, *McGraw v. St. Joseph's Hosp.,* 200 W.Va. 114, 488 S.E.2d 389. Typically, the need for expert testimony is obviated, however, in cases involving negligence claims that are within the jury's common knowledge as nonmedical laypersons.

"In medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach

11. As the assignment of error regarding the genuine issue of material fact pertains solely to Banfi's prevention of fall claim, we reserve for our

discussion thereof our coordinate analysis of the law applicable thereto. *See infra* Section III.B.

relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's prima facie showing of negligence." Syl. Pt. 4, *Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985).

Syl. pt. 6, *McGraw, id. See also* Syl. pt. 3, *Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (" 'It is the general rule that want of professional skill can be proved only by expert witnesses. However, cases may arise where there is such want of skill as to dispense with expert testimony.' Syl. pt. 2, *Howell v. Biggart,* 108 W.Va. 560, 152 S.E. 323 (1930)."). Likewise, "[t]he standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony, because the jury is competent from its own experience to determine and apply a reasonable care standard." Syl. pt. 9, *McGraw,* 200 W.Va. 114, 488 S.E.2d 389. *See also Murphy v. Schwartz,* 739 S.W.2d 777, 778 (Tenn.Ct.App. 1986) (instructing that "common knowledge" exception to requirement of expert testimony in medical malpractice case operates when "the medical negligence is as blatant as a 'fly floating in a bowl of buttermilk' so that all mankind knows that such things are not done absent negligence" (citation omitted)). With these principles in mind, we proceed to evaluate the circuit court's rulings.

### A. Restraints

■ The first category of claims asserted by Banfi against the defendants concerns the defendants' failure to properly restrain Mrs. Cunningham while she was a patient at American Hospital. In this respect, Banfi urges that the defendants should have ordered restraints for Mrs. Cunningham and/or watched her more closely to ensure her safety during her hospitalization in American

Hospital's facility. The defendants reply that the decision of whether to restrain a patient is a medical decision which requires a physician's orders. In granting summary judgment to the defendants, the circuit court agreed that such a matter is a medical decision, and, as such, determined that expert testimony is required to establish whether the defendants were negligent in not ordering such restraints.

■ As we noted above, while a circuit court has discretion to require expert testimony in a case alleging medical negligence, it is generally acknowledged that such testimony is necessary when the allegation in question involves a technical medical decision, which is not within the ordinary and common knowledge of the average lay juror. Syl. pts. 5, 6, & 9, *McGraw,* 200 W.Va. 114, 488 S.E.2d 389. Our research indicates that the majority of jurisdictions considering the question of whether restraining a patient is, in fact, a technical medical decision have concluded that it is a complex determination, and therefore expert testimony is required to educate the jury as to the appropriate standard of care. *See, e.g., Leonard v. Providence Hosp.,* 590 So.2d 906 (Ala.1991) (concluding that whether a patient should be restrained is a complex medical decision requiring expert testimony). *Accord Sexton v. St. Paul Fire & Marine Ins. Co.,* 275 Ark. 361, 631 S.W.2d 270 (1982); *Washington Hosp. Ctr. v. Martin,* 454 A.2d 306 (D.C.1982); *Taylor v. City of Beardstown,* 142 Ill.App.3d 584, 96 Ill.Dec. 524, 491 N.E.2d 803 (1986); *Waatti v. Marquette Gen. Hosp., Inc.,* 122 Mich.App. 44, 329 N.W.2d 526 (1982) (per curiam); *Reifschneider v. Nebraska Methodist Hosp.,* 222 Neb. 782, 387 N.W.2d 486 (1986); *Carrigan v. Roman Catholic Bishop,* 104 N.H. 73, 178 A.2d 502 (1962); *Mossman v. Albany Med. Ctr. Hosp.,* 34 A.D.2d 263, 311 N.Y.S.2d 131 (1970); *Bronaugh v. Harding Hosp., Inc.,* 12 Ohio App.2d 110, 231 N.E.2d 487 (1967); *Murphy v. Schwartz,* 739 S.W.2d 777.[12] *But*

---

12. *Cf. Butler v. Caldwell Mem'l Hosp.,* 90 Idaho 434, 412 P.2d 593 (1966) (noting that ordering of restraints is within purview of treating physician); *Clites v. Iowa,* 322 N.W.2d 917 (Iowa Ct.App.1982) (reaching conclusion that expert testimony is necessary regarding patient re-straints in context of individuals with psychiatric disorders, and citing *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)); *Bennett v. Winthrop Community Hosp.,* 21 Mass. App.Ct. 979, 489 N.E.2d 1032 (1986) (basing decision of whether expert testimony is required

see *Emig v. Physicians' Physical Therapy Serv., Inc.*, 432 N.E.2d 52 (Ind.Ct.App.1982) (observing that decision of whether to restrain patient is routine, ministerial decision within common knowledge of lay jury), *superseded by statute as stated in Ogle v. St. John's Hickey Mem'l Hosp.*, 473 N.E.2d 1055 (Ind.Ct.App.1985). Therefore, in the absence of indicia to suggest that the circuit court abused its discretion, we conclude that the court did not err by requiring expert testimony on the patient restraints issue, and we affirm its ruling in this regard.

### B. Prevention of Fall

Next, Banfi alleges that the defendants were negligent in failing to prevent Mrs. Cunningham's fall. For this issue, we are presented with conflicting factual accounts as to how Mrs. Cunningham came to be upon her bathroom floor. Banfi represents that Mrs. Cunningham, having been instructed not to get out of bed without assistance, repeatedly called for help in traveling to the bathroom. When no one came to her aid, Mrs. Cunningham finally attempted to journey to the bathroom by herself and thereupon fell to the floor. By contrast, the defendants report that when Mrs. Cunningham was discovered on her bathroom floor, she appeared apologetic and claimed that she had not requested assistance because she did not want to bother anyone. In rendering its final order, the circuit court made no distinct findings and rendered no specific conclusions with respect to these counts of negligence against the defendants. The court did, however, determine that our prior decision in *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389, was not applicable to this case.

On appeal to this Court, Banfi complains that the circuit court erroneously granted summary judgment to the defendants on this claim despite the existence of a genuine issue of material fact regarding Mrs. Cunningham's fall and that, in any event, expert testimony was not required to prove the defendants' negligence. First, in considering the propriety of the summary judgment award, we are of the opinion that the varying accounts of the facts surrounding Mrs. Cunningham's fall demonstrate a genuine issue of material fact so as to preclude summary judgment on the issue of the defendants' culpability for this incident. Rule 56(c) of the West Virginia Rules of Civil Procedure renders proper the summary disposition of a case when "there is *no genuine issue as to any material fact* and ... the moving party is entitled to a judgment as a matter of law." (Emphasis added).

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. pt. 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995). *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–12 (1986) (A "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."); Syl. pt. 2, in part, *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995) ("An issue is 'genuine' when the evidence relevant to it, viewed in the light most favorable to the party opposing the motion, is sufficiently open ended to permit a rational factfinder to resolve the issue in favor of either side.").

While the defendants' theory of the case factually supports a judgment in their favor, so, too, is it plausible, under Banfi's version of the circumstances surrounding Mrs. Cunningham's fall, that a jury could

on issue of patient restraints upon facts of individual case); *Kujawski v. Arbor View Health Care Ctr.*, 139 Wis.2d 455, 407 N.W.2d 249 (1987) (differentiating between restraints for patient's protection, which decision involves routine care and does not need to be established by expert testimony, and those for modification of patient's behavior, which determination requires a physician's order and must be supported by expert testimony).

find the defendants solely liable for this occurrence and therefore absolve the decedent of any responsibility. Given this possibility of a verdict for either party, we are sufficiently convinced that this factual dispute "has the capacity to sway the outcome of the litigation," Syl. pt. 5, in part, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451, so as to render improper an award of summary judgment on this issue: "[i]f there is no genuine issue as to any material fact summary judgment should be granted but *such judgment must be denied if there is a genuine issue as to a material fact.*" Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963) (emphasis added). *See also Hanlon v. Chambers*, 195 W.Va. 99, 105, 464 S.E.2d 741, 747 (1995) ("[I]f there is any evidence in the record from any source from which a reasonable inference can be drawn in favor of the nonmoving party, summary judgment is improper."). Accordingly, we reverse the circuit court's order insofar as it granted summary judgment to the defendants on Banfi's claims alleging that they were negligent in failing to prevent Mrs. Cunningham's fall. We remand this matter for further proceedings consistent with our instructions below.

■ With respect to whether the circuit court erred by requiring expert testimony on the fall prevention claim, we have observed that the circuit court conclusively determined that our prior decision in *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389, does not apply to this proceeding. With this conclusion, however, we strongly disagree. Not only did *McGraw* involve facts similar to those at issue herein, but we also determined, in that case, that claims of negligence arising from a hospital patient's fall generally do not require expert testimony as the applicable standard of care is within the common knowledge of the average lay jury. 200 W.Va. at 120–22, 488 S.E.2d at 395–97.[13] As the case *sub judice* is remarkably similar to our prior decision of *McGraw*, we instruct the circuit court to refer to this precedent during its reconsideration of this issue.

13. For cases from other jurisdictions finding that expert testimony is not required to prove negligence when a hospital patient falls, see *McGraw*,

## C. Diagnosis and Treatment

■ Lastly, Banfi complains that the defendants were negligent in their diagnosis and treatment of Mrs. Cunningham following her fall. In this count, Banfi asserts that the defendants failed to timely diagnose and treat Mrs. Cunningham's post-fall injuries, and that such delay caused an aggravation of a prior, nonspecific injury she had sustained. The defendants respond that they timely diagnosed and treated Mrs. Cunningham's broken hip, and that, absent expert testimony, Banfi has not demonstrated their deviation from the standard of care. Again, the circuit court agreed with the defendants and, finding that Banfi had not proffered expert testimony in support of her claims, granted summary judgment thereon to American Hospital and Dr. Narayan.

As we noted above, typically expert testimony is required to prove claims of medical negligence when the alleged misconduct involves a complex medical decision rather than a matter involving nonmedical, routine, or ministerial care. *See* Syl. pts. 5, 6, & 9, *McGraw*, 200 W.Va. 114, 488 S.E.2d 389. Similar to our finding in Section III.A., *supra*, that a medical decision, which requires expert testimony, is presented as to whether patient restraints should have been ordered in a particular case, so too do we conclude that the present claim requires expert testimony. In other words, whether a defendant has properly diagnosed and/or treated a patient entrusted to his/her care necessitates expert testimony because such a question is outside the common knowledge of the typical jury. A multitude of our sister jurisdictions addressing such a query have reached the same conclusion. *See, e.g., Spring Creek Living Ctr. v. Sarrett*, 319 Ark. 259, 890 S.W.2d 598 (1995) (concluding that expert testimony is required to prove claims of negligent diagnosis and treatment). *Accord Donovan v. Iowa*, 445 N.W.2d 763 (Iowa 1989); *Sorenson v. St. Paul Ramsey Med. Ctr.*, 444 N.W.2d 848 (Minn.Ct.App.1989), *aff'd as modified*, 457 N.W.2d 188 (Minn.

200 W.Va. at 120–21, 488 S.E.2d at 395–96, and cases cited therein.

1990); *Kelly v. Berlin,* 300 N.J.Super. 256, 692 A.2d 552 (App.Div.1997); *Redding v. Saunders,* 213 A.D.2d 1015, 625 N.Y.S.2d 115 (1995) (mem.).[14] *But see Hare v. Wendler,* 263 Kan. 434, 442, 949 P.2d 1141, 1147 (1997) (noting that common knowledge exception can obviate need for expert testimony where "if what is alleged to have occurred in the *diagnosis, treatment,* and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally" (internal quotations and citations omitted) (emphasis added)). Because we can locate no basis for concluding that the circuit court abused its discretion in requiring Banfi to present expert testimony regarding the defendants' allegedly improper diagnosis and treatment of the decedent, we affirm the circuit court's ruling in this regard.

## IV.

## CONCLUSION

For the foregoing reasons, the February 25, 1999, order of the Circuit Court of Cabell County is affirmed, in part, and reversed, in part, and this case is remanded for further proceedings consistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded.

---

**14.** *See also Stowe v. McHugh,* 46 Conn.App. 391, 699 A.2d 279 (1997) (requiring expert testimony with respect to allegations of negligent treatment of patient's medical condition); *District of Columbia v. Mitchell,* 533 A.2d 629 (D.C.1987) (same); *Saxton v. Toole,* 240 Ill.App.3d 204, 181 Ill.Dec. 160, 608 N.E.2d 233 (1992) (same); *Smith v. Weaver,* 225 Neb. 569, 407 N.W.2d 174 (1987) (same); *Ramage v. Central Ohio Emergency Servs., Inc.,* 64 Ohio St.3d 97, 592 N.E.2d 828 (1992) (same); *Murphy v. Schwartz,* 739 S.W.2d 777 (Tenn.Ct.App.1986) (same); *Reeves v. Geigy Pharm., Inc.,* 764 P.2d 636 (Utah Ct.App.1988) (same). *Cf. Espinosa v. Little Co. of Mary Hosp.,* 31 Cal.App.4th 1304, 1319, 37 Cal.Rptr.2d 541, 550 (1995) (observing that "[t]o prove the defendant's negligence was a substantial factor in causing the plaintiff's condition in [lost-chance] cases, the plaintiff must present expert testimony that if proper treatment had been given, a better result would have followed" (citation omitted)).