Wanda DITCH, Administratrix
of Estate of Catherine S.
Verdier, Appellant

v.

WAYNESBORO HOSPITAL, Appellee.

No. 2111 MDA 2005.

Superior Court of Pennsylvania.

Argued Sept. 13, 2006.
Filed Jan. 8, 2007.
Reargument Denied March 19, 2007.

Daniel L. Hessel, Philadelphia, for appellant.

Shaun J. Mumford, Camp Hill, for appellee.

BEFORE: JOYCE, ORIE MELVIN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Wanda Ditch, Administratrix of the Estate of Catherine S. Verdier, appeals from the trial court's order denying her petition to open and/or strike the judgment of *non pros* in favor of Waynesboro Hospital ("Waynesboro"). The trial court found Ditch's complaint raised a claim of professional negligence, not of ordinary negligence, and entered a judgment of *non pros* because Ditch failed to file a timely certificate of merit. Ditch contends that the complaint did not raise a professional liability claim against the hospital but instead raised an ordinary negligence claim, and hence, a certificate of merit was not needed. Ditch also contends that Waynesboro failed to properly raise the issue of the certificate of merit through preliminary objections. Alternatively, Ditch contends that she did file a timely certificate of merit as she filed an amended complaint which provided her with additional time within which to file the certificate. Finally, Ditch asks this Court to determine whether equitable exceptions to the rule requiring the filing of a certificate of merit apply in this case. After careful study, we find no merit in Ditch's contentions. Accordingly, we affirm the trial court's order.

¶ 2 On March 23, 2002, Catherine S. Verdier suffered a stroke and was taken to the emergency department at Waynesboro. While being moved from the emergency department to a hospital room, Verdier fell from her hospital bed striking her head on the floor. Due to the fall, Verdier suffered a right orbital fracture and a subdural hematoma from which she died on March 26, 2002. Ditch, as the administratrix of Verdier's estate, filed a wrongful death and survival action on February 17, 2004. In this initial complaint, Ditch argues that Verdier's death was caused by the negligence and carelessness of Waynesboro, acting through its employees and agents. Specifically, Ditch averred that Waynesboro was negligent in failing to properly restrain Verdier, failing to properly train the staff with regard to proper procedures in transporting patients, and in leaving Verdier alone while she was being transported.

¶ 3 On March 14, 2004, Waynesboro filed preliminary objections asserting Ditch's complaint did not sufficiently plead facts to support a professional liability claim against the hospital and that Ditch failed to file a certificate of merit. Waynesboro sought to either strike the complaint or in the alternative asked the trial court to direct Ditch to file an amended complaint. Waynesboro brought the preliminary objections before the trial court, but did not comply with local court rules. The preliminary objections were properly noticed on January 12, 2005. On January 20, 2005, Ditch filed an amended complaint which identified agents and employees of Waynesboro whose apparent negligent behavior led to Verdier's death, but did not identify who acted negligently by name.

¶ 4 On February 28, 2005, Waynesboro filed a praecipe for entry of judgment of *non pros* against Ditch pursuant to Pa. R.C.P. 1042.6 for failing to file a certificate

of merit, and the trial court granted its motion. On March 8, 2005, Ditch filed a petition to open and/or strike the judgment of *non pros* and on March 9, 2005, Ditch filed a certificate of merit as to Waynesboro. On November 21, 2005, the trial court denied Ditch's petition to open and/or strike the judgment of *non pros* finding the original complaint raised a professional negligence claim and hence required a certificate of merit.

¶ 5 Ditch now appeals, raising the following questions for our review:

1. Whether every negligence complaint filed against a hospital necessarily requires the plaintiff to file a certificate of merit if the plaintiff was at the hospital for the sole and specific purpose of receiving medical care and treatment?

2. Whether the filing of preliminary objections is the procedure for bringing before the court the issue of whether the complaint is asserting a professional liability claim?

3. Whether the filing of an amended complaint provides the plaintiff with an additional sixty (60) day period within which to file a certificate of merit?

4. Whether there are or should be equitable exceptions to the rule requiring a plaintiff to file a certificate of merit and whether any such equitable exceptions apply in this case?

Brief for Appellant at 3.

¶ 6 In this case, the trial court treated the complaint as one sounding in medical malpractice and granted Waynesboro's praecipe for entry of judgment of *non pros* for a failure to file a timely certificate of merit. Trial Court Opinion (T.C.O.), 11/21/05, at 6. The Pennsylvania Rules of Civil Procedure set forth provisions which apply specifically to professional liability actions and require a certificate of merit as a prerequisite to the action. *See* Pa.R.C.P. 1042.1–1042.8. Rule 1042.3, pertaining to the certificate of merit, states in relevant part:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff ... shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

\* \* \* \*

■ (d) The court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed sixty days. The motion to extend the time for filing a certificate of merit must be filed on or before the filing date that the plaintiff seeks to extend. The filing of a motion to extend tolls the time period within which a

certificate of merit must be filed until the court rules upon the motion.

Pa.R.C.P. 1042.3(a), (d) (notes omitted). This rule applies to professional liability claims against licensed professionals, including "a health care provider as defined by Section 503 of the Medical Care Availability and Reduction of Error (MCARE) Act[.]" Pa.R.C.P. 1042.1(b)(1)(i). "The rule contemplates that a certificate of merit will be filed contemporaneously with or shortly after the filing of the complaint, and provides a 60–day window after the filing of the complaint to accomplish the filing of the certificate of merit." *Varner v. Classic Cmtys. Corp.*, 890 A.2d 1068, 1073 (Pa.Super.2006) (citation, internal quotation marks, and brackets omitted). If the rule applies and the plaintiff fails to provide the certificate of merit, the prothonotary may, on praecipe of the defendant, enter a judgment of *non pros* against the plaintiff. *See* Pa.R.C.P. 1042.6.

■ ¶ 7 In support of her first argument, Ditch contends that her original complaint and amended complaint do not assert a professional negligence claim necessitating a certificate of merit under Rule 1042.3. Brief for Appellant at 10–11. While Ditch does not dispute that Waynesboro qualifies as a health care provider as defined by the MCARE Act, she argues that the complaint sets forth a claim of only ordinary negligence against Waynesboro under which no certificate of merit is needed. Brief for Appellant at 10–11.

¶ 8 Ditch likens her case to a "slip and fall" claim such as an allegation that a hospital negligently waxed a hallway which caused a person to fall and sustain injuries. Brief for Appellant at 11. Ditch further contends that since neither the original complaint nor the amended complaint asserts that Waynesboro deviated from an "accepted professional standard," she has not raised a professional negligence claim. Brief for Appellant at 11. Ditch does not provide any support for her claim aside from citing to Pa.R.C.P. 1042.3. Brief for Appellant at 10–11.

¶ 9 Here, Ditch's complaint sets forth a negligence claim against Waynesboro and by extension, its employees. Ditch does not specify in her original complaint or amended complaint which employees of Waynesboro were responsible for transporting Verdier before her fall. Ditch contends that Waynesboro was negligent for failing to properly restrain Verdier while transporting her from the emergency room to a hospital room and leaving Verdier unattended before the fall. *See* Original Complaint, 2/17/04, at 2–3; Amended Complaint, 1/20/05, at 2–3. Ditch also avers that Waynesboro failed to hire competent staff or properly train the staff with regard to proper procedures in transporting patients in her original complaint. *See* Original Complaint, 2/17/04, at 2–3.

■ ¶ 10 In order to determine what theory of liability Ditch is asserting, this Court must examine the averments she makes in her complaint. *See Grossman v. Barke*, 868 A.2d 561, 568 (Pa.Super.2005). Such a review "raises a question of law as to which our standard of review is *de novo* and our scope of review is plenary." *Hosp. and Healthsystem Ass'n of Pennsylvania v. Dept. of Pub. Welfare*, 585 Pa. 106, 888 A.2d 601, 607 n. 12 (2005). Here, the trial court concluded that Ditch's averments in both the original complaint as well as the amended compliant raised a medical malpractice claim against Waynesboro. T.C.O., 11/21/05, at 5.

■ ¶ 11 Medical malpractice is defined as the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct

arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.,* 573 Pa. 245, 824 A.2d 1140, 1145 (2003). "[T]o prevail in a medical malpractice action, a plaintiff must 'establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.'" *Id.* (quoting *Hightower–Warren v. Silk,* 548 Pa. 459, 698 A.2d 52, 54 (1997)). Thus, the basic elements of medical malpractice and ordinary negligence are the same, although medical malpractice has some distinguishing characteristics. *See Grossman,* 868 A.2d at 566. The *Grossman* Court drew the distinction between ordinary negligence and medical malpractice as follows:

A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment. Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the [factfinder]. Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.

*Id.* at 570 (quoting *Bryant v. Oakpointe Villa Nursing Centre,* 471 Mich. 411, 684

N.W.2d 864, 871 (2004)). Therefore, "where a complaint is predicated upon facts constituting medical treatment, that is, when it involves diagnosis, care and treatment by licensed professionals, the action must be characterized as a professional negligence action." *Yee v. Roberts,* 878 A.2d 906, 912 (Pa.Super.2005) (internal citations and quotation marks omitted); *cf. Estate of Swift v. Northeastern Hosp. of Philadelphia,* 456 Pa.Super. 330, 690 A.2d 719, 723 (1997) (concluding complaint alleging bodily injury as a result of a slip and fall in hospital set forth claim of premises liability and not hospital malpractice). Our Court has further found that the hiring, training, supervising, and monitoring of employees who assist with the care and treatment of a health care professional's patients is considered an integral part of providing professional services. *See Yee,* 878 A.2d at 912–13; *American Rehab. and Physical Therapy, Inc. v. American Motorists Ins. Co.,* 829 A.2d 1173, 1177–78 (Pa.Super.2003), *rev'd on other grounds,* 578 Pa. 154, 849 A.2d 1202 (2004).

¶ 12 Here, the original complaint and the amended complaint do not specify that a professional liability claim is being raised. However, looking at the averments made by Ditch in the complaint as a whole, we agree with the trial court's conclusion that Ditch raises a professional negligence claim. In both the original complaint and the amended complaint, Ditch avers that "Verdier suffered a stroke and was transported to Waynesboro Hospital where she was seen in Waynesboro Emergency Department." *See* Original Complaint, 2/17/04, at 2; Amended Complaint, 1/20/05, at 2. Additionally, Ditch avers that a "Waynesboro employee was transporting Catherine Verdier from the Emergency Department to a room in the hospital for further treatment." *See* Original Complaint, 2/17/04, at 2; Amended

Complaint, 1/20/05, at 2. Both complaints also aver that Waynesboro did not properly restrain Verdier during transport and that a Waynesboro employee left Verdier unattended before her fall. *See* Original Complaint, 2/17/04, at 2–3; Amended Complaint, 1/20/05, at 2–3.

¶ 13 Ditch likens her claim to one of "slip and fall." Brief for Appellant at 11. We disagree. Verdier was at the hospital to receive medical treatment for her stroke from Waynesboro and its employees. It was during the course of treatment that someone in the emergency room with medical knowledge made the decision to transport Verdier to a regular hospital room. Furthermore, the decision was made to transport Verdier without restraints. *See Grossman,* 868 A.2d at 571 (stating that consideration of medical condition in preparation of medical services implicates medical judgment); *see also Banfi v. American Hosp. for Rehab.,* 207 W.Va. 135, 529 S.E.2d 600, 606–07 (2000) (noting that the decision of whether to restrain a patient is a technical medical determination). "These decisions and actions were an integral part of providing medical treatment and, on some level, implicate medical judgments." T.C.O., 11/21/05, at 5. Our Court has found that the actions of employees who assist with the care and treatment of a health care professional's patients form an integral part of providing professional services. *See Yee,* 878 A.2d at 912–13. Here, Ditch does not aver that Verdier was not receiving medical treatment at the time she was being transferred from the emergency room to a hospital room. Moreover, Ditch, while not explicitly identifying who transported Verdier, does indicate an agent, servant or employee of Waynesboro was at fault. Reviewing Ditch's entire complaint, we conclude that the complaint should be characterized as one sounding in medical malpractice because "the conduct at issue constituted an integral part of the process of rendering medical treatment" to Verdier. *Grossman,* 868 A.2d at 570 (citation omitted); *see also Yee,* 878 A.2d at 913 ("The ultimate and unassailable fact is that in the case at bench, the injury caused to [the patient] occurred during, and as a direct result of the performance of professional services.") (citation omitted).

¶ 14 Ditch has provided no support for her assertion that this claim is similar to a "slip and fall" case in a hospital. In fact, Ditch's only support for her assertion is that expert testimony is needed to prove a medical malpractice case. Reply Brief for Appellant at 7. Ditch claims that expert testimony is not needed in the case at bar as a jury can determine, without assistance of an expert, that Waynesboro was negligent for failing to prevent Verdier's fall. Reply Brief for Appellant at 7. Ditch argues accordingly that she has raised a claim sounding in ordinary negligence. Reply Brief for Appellant at 7. We are not persuaded by Ditch's argument as the *Grossman* Court acknowledged that "in a negligence suit characterized as 'medical malpractice,' expert testimony is not always required if the alleged negligence is obvious or within the realm of a layperson's understanding." *Grossman,* 868 A.2d at 567. It is only when the hospital's negligence is not obvious must a plaintiff "establish through expert testimony that a hospital's acts deviated from an accepted standard of care and that the deviation was a substantial factor in causing plaintiff's harm." *Id.* Therefore, the need for expert testimony in a medical malpractice claim will rest upon the facts and averments of the individual case. *See id.*

¶ 15 Here, Ditch avers that Waynesboro did not properly restrain Verdier during transport, that an agent, servant, or em-

ployee of Waynesboro left Verdier unattended before her fall, and that Waynesboro failed to properly train its employees in the proper procedures in transporting patients. *See* Original Complaint, 2/17/04, at 2. We conclude that these averments would require expert testimony. While the complaint states Verdier was in the hospital because of a stroke, it is unknown whether she was conscious or had any mobility upon being moved by Waynesboro employees from the emergency department to the hospital room. A layperson's lack of understanding of the effects of a stroke, the procedures in treating a stroke victim, as well as moving and monitoring them would necessitate expert testimony in this case. Moreover, while our Courts have not explicitly reached the issue of whether expert testimony is needed to determine whether a patient should be restrained, a review of other jurisdictions reveals a majority have concluded that it is a complex medical determination which requires expert testimony to educate juries as to the proper standard of care. *See Banfi,* 529 S.E.2d at 606–07 (collecting cases and stating that the decision to restrain a patient is a technical medical determination requiring expert testimony); *Treaster v. HealthSouth Corp.,* 442 F.Supp.2d 1171, 1181 (D.Kan.2006); *cf. Bennett v. Winthrop Cmty. Hosp.,* 21 Mass.App.Ct. 979, 489 N.E.2d 1032, 1035 (1986) (stating that courts must look at facts of the individual case in deciding whether expert testimony is required on issue of patient restraints). As such, we conclude that expert testimony would be needed under these individualized facts to determine the proper manner in moving stroke patients, whether they have a propensity of falling down, whether they should be restrained, and whether they can be left unattended during the move. *See Grossman,* 868 A.2d at 571 (concluding expert testimony is required to explain to

the jury the impact of the plaintiff's medical condition on her ability to stay safely seated on an examination table).

¶ 16 Ditch also maintains that because she is unsure which individuals were transporting Verdier at the time of her fall, a non-professional could have been responsible for the fall. Reply Brief for Appellant at 8. Ditch provides no case law to support her claim and furthermore, does not distinguish the rationale of *Yee* that the injury "occurred during, and as a direct result of the performance of professional services." *Yee,* 878 A.2d at 913 (citation omitted). As such, we find no merit in Ditch's first argument and conclude that she should have filed a certificate of merit within sixty days of filing the original complaint.

■ ¶ 17 In support of her second question, Ditch contends that Waynesboro was obligated to raise the issue of whether the complaint asserts a professional liability claim by way of preliminary objections. Brief for Appellant at 12. Ditch argues that by not doing so, Waynesboro has waived its objection to the certificate of merit requirement under Pa.R.C.P. 1042.2(b). Brief for Appellant at 14–15. Ditch argues accordingly that the trial court erred in granting Waynesboro's praecipe for entry of judgment of *non pros* based upon the failure to file a certificate of merit.

■ ¶ 18 When reviewing a petition to open and/or strike a judgment of *non pros* pursuant to Pa.R.C.P. 1042.6, our Court "may reverse the decision of the trial court only if we find that the trial court abused its discretion in reaching its determination." *Yee,* 878 A.2d at 910. "It is well-established that a motion to strike off a judgment of non pros challenges only defects appearing on the face of the record and that such a motion may not be granted

if the record is self-sustaining." *Varner,* 890 A.2d at 1072 (citation omitted).

¶ 19 We begin by reviewing Pa.R.C.P. 1042.2, which reads in relevant part:

(a) A complaint shall identify each defendant against whom the plaintiff is asserting a professional liability claim.

\* \* \* \*

■ (b) A defendant may raise by preliminary objections the failure of the complaint to comply with subdivision (a) of this rule.

*Note:* The filing of preliminary objections raising failure of a pleading to conform to rule of court is the procedure for bringing before the court the issue whether the complaint is asserting a professional liability claim.

Pa.R.C.P 1042.2. "A plain reading of Pa. R.C.P. 1042.2(b) is permissive in that a defendant 'may' raise by preliminary objection the failure of a plaintiff to comply with subpart (a) of the rule which indicates that the plaintiff 'shall' identify each defendant against whom the plaintiff is bringing a professional liability claim." *Varner,* 890 A.2d at 1077.

¶ 20 Ditch cites to *Herrmann v. Pristine Pines of Franklin Park, Inc.,* 64 Pa. D. & C.4th 14 (2003) to support her interpretation of Rule 1042.2. In *Herrmann,* the Court of Common Pleas of Allegheny County found that a defendant must raise the issue of the certificate of merit requirement through preliminary objections. *See id.* at 20. The common pleas court concluded that a failure to do so will result in the defendant waiving its claim. *See id.*

¶ 21 First, "[w]e recognize that common pleas court decisions are not binding on appellate courts." *Makozy v. Makozy,* 874 A.2d 1160, 1173 n. 7 (Pa.Super.2005) (citation omitted). Second, this common pleas decision has been explicitly rejected by our Court in both *Varner* and *Yee.* The *Yee*

Court found that it was not persuaded by the result found in *Herrmann* "that the Supreme Court intended to require the filing of preliminary objections as a prerequisite to the filing of a praecipe for judgment of *non pros* in an action based on professional negligence where the plaintiff fails to timely file a certificate of merit." *Yee,* 878 A.2d at 911 n. 7. Our Court further stated that the filing of preliminary objections is irrelevant when the plaintiff has set forth a professional negligence claim and it is his duty to obtain a valid certificate of merit within sixty days of filing the complaint. *See id.* at 910; *Dobos v. Pennsbury Manor,* 878 A.2d 182, 184–86 (Pa.Cmwlth.2005) (concluding that complaint raised a professional negligence claim against a licensed health care provider and thus plaintiff was required to provide a certificate of merit). *See also Varner,* 890 A.2d at 1075–77 (reaffirming *Yee* and *Dobos* in rejecting the holding of *Herrmann*).

¶ 22 Similarly, here, the averments in Ditch's complaint establish that her claim was grounded in professional negligence and made against a licensed professional. As such, Waynesboro does not need to raise preliminary objections in order to file a praecipe for judgment of *non pros. See Varner,* 890 A.2d at 1077 (concluding act of filing a professional negligence complaint triggers obligation to file a certificate of merit). When Ditch failed to file a certificate of merit, Waynesboro properly followed the procedures set forth in Rule 1042.6, resulting in the trial court entering a judgment of *non pros.* Accordingly, we find no merit in Ditch's second question.

■ ¶ 23 In support of her third question, Ditch contends that the filing of her "amended complaint effectively withdraws the original complaint and forecloses all challenges to the original complaint." Brief for Appellant at 15. Ditch argues

accordingly that the filing of the amended complaint foreclosed Waynesboro's ability to seek a judgment of *non pros* based upon the original complaint. Brief for Appellant at 17. We disagree. Ditch's argument does not comport with this Court's decisions in *O'Hara v. Randall*, 879 A.2d 240 (Pa.Super.2005), and *Hoover v. Davila*, 862 A.2d 591 (Pa.Super.2004).

¶ 24 In both *O'Hara* and *Hoover,* our Court found that the certificate of merit must be filed within sixty days of the filing of the original complaint, notwithstanding the filing of preliminary objections and/or an amended complaint. *See O'Hara*, 879 A.2d at 245; *Hoover*, 862 A.2d at 594. In reaching its decision, our Court interpreted the language found in Pa.R.C.P. 1042.3(a) which states in relevant part: "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit. . . ." Pa.R.C.P. 1042.3(a). Our Court found that "the term 'filing' refers to the 'initial commencement of an action,' *i.e.,* the date on which the initial complaint was delivered to court personnel." *O'Hara*, 879 A.2d at 245 (quoting *Hoover*, 862 A.2d at 594). Therefore, "the filing of an amended complaint does not afford the plaintiff an additional sixty days in which to file a certificate of merit." *O'Hara*, 879 A.2d at 245.

¶ 25 Ditch attempts to distinguish *O'Hara* and *Hoover* from the case at bar by claiming the plaintiffs in those cases specifically asserted medical malpractice claims while she does not raise a professional negligence claim in either her original or amended complaint. Brief for Appellant at 18. We find no merit in this assertion as we have already concluded

that Ditch's original complaint sounded in professional negligence. The amended complaint filed by Ditch does not circumvent her duty to file within sixty days of the original complaint, a certificate of merit indicating "that there 'exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about . . .' the injuries suffered by [Verdier]." *Yee*, 878 A.2d at 910 (quoting Pa.R.C.P. 1042.3(a)(1)). Since Ditch raised a professional negligence claim in her original complaint, she was obligated to file a certificate of merit within sixty days of her filing of the original complaint. As Ditch failed to do so, we find no merit in her third question.

∎ ¶ 26 In support of her fourth question, Ditch contends that "[e]quitable exceptions apply to the certificate of merit requirement[,]" which would excuse her from the obligation to file one. Brief for Appellant at 18. First, Ditch argues that her original complaint and amended complaint did not assert claims of professional liability against Waynesboro. Brief for Appellant at 21. Second, Ditch argues that Waynesboro did not file a second set of preliminary objections to the amended complaint arguing that it failed to conform to Pa.R.C.P. 1042.2. Brief for Appellant at 21. Third, Ditch argues that no dispute existed as to whether her claim was grounded in original negligence or professional negligence as counsel for Waynesboro represented to counsel for Ditch that they would be filing an answer to the amended complaint. Brief for Appellant at 21.

¶ 27 Our Supreme Court recently concluded that a plaintiff who fails entirely to file a certificate of merit and against whom

a Rule 1042.6 judgment of *non pros* is entered still has the opportunity to demonstrate that his failure to file a certificate should be excused. *See Womer v. Hilliker*, 908 A.2d 269, 279 (Pa.2006). In *Womer*, the plaintiff took no steps to file a certificate of merit in accordance with Rule 1042.3. *See id.* at 272. Upon a praecipe of the defendant, the trial court entered a judgment of *non pros* pursuant to Rule 1042.6 for failing to file the certificate of merit. *See id.* The plaintiff immediately filed a motion to open the judgment based upon the fact that he had served an expert report on defendant Hilliker prior to Rule 1042.3's time limit having expired, that this information included everything Rule 1042.3 required, that Hilliker was not prejudiced, and that counsel's oversight or mistake caused the omission. *See id.* at 272–73. The trial court denied the motion; however, the Superior Court of Pennsylvania found the plaintiff had provided a reasonable excuse and had substantially complied with the rule, and reversed the trial court. *See id.* at 274–75. The Supreme Court of Pennsylvania found that the plaintiff had not provided a reasonable excuse for his failure to file the certificate of merit and therefore reversed our Court's decision. *See id.* at 279–80.

¶ 28 In reaching its conclusion, the Court found that Rule 1042.3(a) "is subject to equitable considerations." *Id.* at 279. Initially, the Court found there to be a difference in substantially complying with the rule and not complying with the rule at all. *See id.* at 276–78. If a plaintiff has substantially complied with the rule, such as presenting a defective certificate of merit, the trial court would analyze the case under Pa.R.C.P. 126. *See id.* at 276–77. Rule 126 states that "[t]he court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P.

126. The Supreme Court found that a plaintiff who did not file a certificate of merit presented a situation of complete non-compliance, and Rule 126 is not an available remedy. *See Womer*, 908 A.2d at 277–78. However, a plaintiff, who does not comply with the rule of filing a certificate of merit at all and against whom a judgment of *non pros* pursuant to Rule 1042.6 has been entered, may still seek relief under Pa.R.C.P. 3051. *See id.* at 279. Rule 3051, which allows a trial court to grant relief from a judgment of *non pros*, states:

**Rule 3051. Relief from Judgment of Non Pros**

(a) Relief from a judgment of non pros shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.

(b) If the relief sought includes the opening of the judgment, the petition shall allege facts showing that

(1) the petition is timely filed,

(2) there is a reasonable explanation or legitimate excuse for the inactivity or delay, and

(3) there is a meritorious cause of action.

Pa.R.C.P. 3051. The Court in *Womer*, analyzing the case under Rule 3051 since the plaintiff had not filed a certificate of merit, concluded that the plaintiff had not proffered reasonable excuses to gain relief. *See Womer*, 908 A.2d at 280.

¶ 29 As in *Womer*, Ditch has not complied with the certificate of merit requirement following her filing of the original complaint. *See Womer*, 908 A.2d at 278. As such, we must address Ditch's fourth question for relief from a judgment of *non pros* for failing to file a certificate of merit under the confines of Rule 3051. *See id.* at 279. At the outset, we note that "[i]t is

well-settled that the ruling that a trial court makes under Pa.R.C.P. No. 3051 is reviewed on appeal for an abuse of discretion." *Id.* (citation omitted). "This means that the trial court's decision will be overturned only if reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Id.* (citation omitted).

¶ 30 While Ditch does not explicitly cite to Rule 3051, she attempts to provide reasonable explanations for her failure to file a certificate of merit. Brief for Appellant at 20–21. To support her above claims, Ditch cites to *Almes v. Burket,* 881 A.2d 861 (Pa.Super.2005). In *Almes,* our Court found that the plaintiff had proffered reasonable excuses for failing to file a timely certificate of merit sufficient to open a judgment of *non pros* pursuant to Pa. R.C.P. 3051, where plaintiff's counsel learned his mother-in-law died and her burial was scheduled for the day the certificate of merit was due. 881 A.2d at 866. Our Court was "not prepared to assert that an attorney who forgets that the certificate was due or who fails to take the above mentioned actions when faced with a family crisis like the one presented here is so derelict in his obligations that the oversight should not be excused." *Id.* The Court found that the plaintiff had met all three prongs of Rule 3051. *See id.*

¶ 31 Here, we find Ditch's proffered reasons for failing to file a certificate of merit do not reach the level of the reason found in *Almes. See Yee,* 878 A.2d at 909–11 (finding that plaintiff's claim that delay in filing certificate of merit was due to defendant's filing of preliminary objections did not present a legitimate excuse for opening a judgment of *non pros); see also Womer,* 908 A.2d at 279–80 (finding excuses proffered by plaintiff for failing to file a certificate of merit were not reasonable). Accordingly, we conclude that the trial court

did not abuse its discretion in denying Ditch's motion to open and/or strike the judgment of *non pros* in favor of Waynesboro. Therefore, we find no merit in Ditch's fourth question.

¶ 32 For the foregoing reasons, we affirm the trial court's order.

¶ 33 Order **AFFIRMED.**