**Gerald J. IWANEJKO, Jr.; Gerald J. Iwanejko, Sr.; Patricia J. Iwanejko**

v.

**COHEN & GRIGSBY, P.C.; Western Psychiatric Institute and Clinic; Donald Savko; Joseph Nichols; The City of Pittsburgh, PA; Pittsburgh Police Officer James L. Aker; Dr. Lawson Bernstein, M.D., P.C.**

**Gerald J. Iwanejko, Jr., Appellant.**

**No. 06–4471.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 25, 2007.

Filed: Oct. 11, 2007.

Gerald J. Iwanejko, Jr., Volant, PA, pro se.

Edward A. Yurcon, Anstandig, McDyer & Yurcon, Jason M. Logue, Dickie, McCamey & Chilcote, Michael E. Kennedy, City of Pittsburgh Department of Law, Pittsburgh, PA, Joseph S.D. Christof, II, for Appellant.

Before: McKEE, BARRY, and FISHER, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Gerald J. Iwanejko, Jr. ("Iwanejko") appeals from orders of the District Court dismissing his claims or granting summary judgment as to three of the nine defendants in this case. More specifically, he challenges the Court's disposition of his 42 U.S.C. § 1983 claim against the City of Pittsburgh; various claims against Cohen & Grigsby, P.C. ("C&G"), a Pittsburgh law firm; and his negligence *per se* claim against Western Psychiatric Institute and Clinic ("Western Psych"). We will affirm.

## I.

Iwanejko, an associate attorney at C&G, arrived at work before 8:00 a.m. on Monday, December 3, 2001. He had an assignment that was scheduled to be completed early that day. Due in part to various stressors in his life, Iwanejko believed that the day was actually Sunday. When other employees began to arrive, however, he realized that it was in fact Monday and he did not have the extra day he thought he had. Upon realizing this, he had an acute psychotic episode and began to shout and use profanities.

Frederick L. Tolhurst, another attorney at C&G, went to Iwanejko's office and told him to stop shouting and swearing. Iwanejko pushed Tolhurst aside and, after a short break, began to shout again. Iwanejko was ranting about his father and, holding a bottle of contact lens solution, speaking as if the solution had healing properties. It was clear to Tolhurst that Iwanejko was not thinking or speaking coherently. Iwanejko left his office, saying that he was going to meet his father in the parking garage. Tolhurst asked Iwanejko to wait, but when Iwanejko refused, Tolhurst followed him to the elevator.

Iwanejko—still behaving erratically—took the elevator to the top level (the "A" level) of the parking garage. Iwanejko's father was not in the garage, but Linda Kelley was there, parking her car. According to Kelley, Iwanejko shouted at her when she exited her car, threw the bottle of lens solution at her, and assaulted her. Tolhurst, who had followed Iwanejko to the garage, saw Iwanejko throw the bottle at Kelley and then attempt to kiss her. He pulled Iwanejko away from Kelley and restrained him, with Iwanejko screaming incoherently.

Iwanejko was then either escorted or followed down to the "B" level of the garage by Tolhurst and a garage employee. Tolhurst claims, and Iwanejko denies, that Iwanejko, while continuing to rant, laid down in front of oncoming vehicles. Tolhurst and another man pulled Iwanejko out of the way of the vehicles. When Pittsburgh police officers arrived, Iwanejko was lying on the ground. Tolhurst told Officer Joseph Nicholas what had happened.

Nicholas and those of Iwanejko's coworkers who had by then come to the garage convinced Iwanejko to get up off the ground. Iwanejko again became agitated, ranting and crying. Given Iwanejko's increased agitation, Nicholas handcuffed him, and Iwanejko began banging his head against the garage wall. Nicholas and the other responding officers placed Iwanejko into a police car where he thrashed about, attempted to kick the windows out of the car, banged his head against the windows and partitions, and made incoherent biblical references. Although Iwanejko claims that he did not act violently or dangerously at any time and did not bang his head on anything, he does not dispute that he was otherwise acting in a psychotic manner—in his words, he was "absolutely acting crazy, no question."

Nicholas and Officer Donald Savko took Iwanejko to Western Psych. According to Nicholas and Savko, on the trip Iwanejko continued to bang his head against the windows of the car and make biblical references. After arriving at Western Psych, he continued to act aggressively, and hospital staff placed him in restraints. Officer James Aker filled out an Application for Involuntary Emergency Examination and Treatment, and Iwanejko was involuntarily committed.

Two physicians examined Iwanejko, diagnosed him as severely mentally disabled and in need of treatment. He remained at Western Psych for about a week. Later, other physicians—Dr. Cameron Carter, Dr. Timothy Mitzel, and Dr. Lawson Bernstein—concluded from the records that Iwanejko had had an acute psychotic episode and needed medical care. C&G offered Iwanejko leave under the Family and Medical Leave Act ("FMLA") while he recovered and retained Dr. Bernstein to advise the firm as to Iwanejko's ability to return to work. Iwanejko agreed to meet with Dr. Bernstein and allowed Dr. Bernstein to review his medical records.

Iwanejko, pursuant to an agreement drafted with Dr. Bernstein's input and signed by him, returned to work at C&G in February 2002 with certain limitations. Under the agreement, Iwanejko's work hours were limited to 30 hours per week, and only between 8:00 a.m. and 6:00 p.m. on weekdays. In October 2002, C&G agreed to expand Iwanejko's hours to 40 hours per week.

In March 2003, Allan Tedesco, C&G's Vice President of Administration and Chief Operating Officer, saw Iwanejko in the office after 6:00 p.m. Tedesco asked Iwanejko about this breach of the return to work agreement. Iwanejko claimed that he only violated the agreement a handful of times and only did so in order to complete assignments. C&G looked into the matter and found that Iwanejko had worked later than his agreed upon limit 87 times. In May 2003, C&G terminated Iwanejko for failure to abide by the agreement and for being untruthful about the number of times he had worked later than 6:00 p.m.

Iwanejko, together with his parents,[1] filed a complaint in December 2003 against the City of Pittsburgh; Officers Nicholas,

---

1. Iwanejko's parents are not parties to this appeal.

Aker, and Savko; Linda Kelley; Western Psych; C&G; Dr. Bernstein; and the Chubb Group of Insurance Companies. The complaint stated numerous federal and state law claims. As relevant here, however, the District Court dismissed the negligence *per se* claim against Western Psych because Iwanejko did not file a "certificate of merit" pursuant to Pennsylvania Rule of Civil Procedure 1042.3, granted summary judgment to the City of Pittsburgh on Iwanejko's § 1983 claim, and granted summary judgment or dismissals to C&G on Iwanejko's Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), Pennsylvania Human Relations Act ("PHRA"), and state law wrongful discharge claims. It is those claims that Iwanejko now appeals.[2]

## II.

We exercise plenary review of grants of summary judgment. *Ye v. United States,* 484 F.3d 634, 636 (3d Cir.2007). Summary judgment is appropriate where "there is no genuine issue as to any material fact" and judgment may be granted as a matter of law. Fed. R. Civ. Pro. 56(c). We also exercise plenary review of a dismissal under Federal Rule of Civil Procedure 12(b)(6), and accept as true all facts alleged in the complaint, construing them in the light most favorable to the nonmoving party. *AT & T Corp. v. JMC Telecom, LLC,* 470 F.3d 525, 530 (3d Cir.2006).

■ First, Iwanejko's challenge to the District Court's grant of summary judgment to the City of Pittsburgh on his § 1983 failure to train claim is without merit. Under *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), a municipality may be held liable for constitutional violations resulting from its failure to train its employees.

Although it is less than clear, it appears that Iwanejko's argument on this claim has two prongs: (a) because genuine issues of material fact existed as to the extent of his conduct on December 3rd, summary judgment should not have been granted; and (2) genuine issues of material fact existed as to "the lack of a formal police procedure expressly covering an involuntary commitment situation and/or failure to ... train ... the involved police officers to follow proper procedure in this case." Reply Br. at 13–14.

The argument as to the first prong goes as follows: the allegations that he was violent or threatening violence are false because he "has no recollection of ever engaging in any violent, threatening or harmful conduct on that day prior to his sedation and voluntary commitment [or] of ever engaging in any physical contact with Kelley...." (App. Br. at 13). Separate and apart from the fact that the conduct to which he admits—the "absolutely ... crazy" conduct—warranted intervention, no issue of fact exists when the testimony of each of the relevant witnesses as to that issue is consistent and the only response is "I don't recall."

As for the second prong, no evidence supports his argument that the failure to train caused him to be involuntarily committed in violation of his constitutional rights. The only evidence goes only one way: as Chief McNeilly put it, how to handle involuntary commitments is a culmination of many policies and that subject matter is covered in many places as well as in the training of officers. Summary judgment was properly granted on the § 1983 claim.

■ Iwanejko next contends that summary judgment and/or dismissals in favor

---

**2.** The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over the federal claims and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims. We have jurisdiction under 28 U.S.C. § 1291.

of C&G were inappropriate on the FMLA, ADA and PHRA claims.[3] As to the FMLA claim, he points to "expert evidence" from his treating physicians showing that the working hour restrictions "were never medically necessary." Reply Br. at 14. This created a factual issue, he argues, as to whether C&G engaged in unlawful discrimination "in disregarding the advice of his treating physicians." *Id.* We disagree. Given the nature of Iwanejko's psychotic episode, which episode he concedes, the manner in which C&G fashioned the gradual resumption of workload and an environment which he would find less stressful, including the fashioning of the return to work agreement, was reasonable, nondiscriminatory, and not in retaliation for exercising his rights under the FMLA (or any other statute) and no facts even suggest to the contrary. And medical necessity aside, as the District Court observed,

> Plaintiff does not appreciate the seriousness of the December incident and discounts the validity of C&G's concerns about the safety of co-workers, visitors and tenants, as well as Plaintiff's own safety. It was appropriate for C&G, acting on the advice [sic] of Dr. Bernstein, to impose reasonable limits on Iwanejko's work hours which appear to have been rationally designed to prevent the type of stress that triggered the subject behavior exhibited on December 3, 2001.

App. 26a.

■ Iwanejko also asserts that factual issues exist as to C&G on the ADA and PHRA claims because C&G "regarded"

him as disabled yet refused to accommodate his perceived disability so that he could continue his employment. But the primary accommodation he sought was to lift the "medically unnecessary" working hour restrictions. It appears, at least to us, that what he sought was an end to the accommodation to which he had agreed of reduced hours. In any event, whether the restrictions were medically necessary, there were other undisputed reasons why they were imposed and should have remained in effect when he returned to work and no genuine issue of fact that Iwanejko was terminated because he violated the agreement numerous times and was less than candid about it. Summary judgment and/or dismissals were properly granted on the ADA and PHRA claims.

■ Iwanejko next asserts that the District Court erred in dismissing his wrongful discharge claim against C&G. The Court dismissed the claim because Pennsylvania allows the termination of an at-will employee for any reason or no reason at all and the public policy exception to the at-will employment rule does not apply where statutory relief is available to the employee. The Supreme Court of Pennsylvania has held that, because a PHRA claim is available in discrimination cases, a wrongful discharge claim will not lie. *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 921 (1989). Therefore, the motion to dismiss the wrongful discharge claim was properly granted.

■ Finally, Iwanejko claims that the District Court erred in dismissing his negligence *per se* claim against Western Psych[4] because he failed to file a "certifi-

---

**3.** Iwanejko's FMLA claim was based on C&G's alleged refusal to allow Iwanejko to end his FMLA leave and return to work without executing the return to work agreement. He also asserts that the agreement was discriminatory and in retaliation for his exercise of his rights under the FMLA.

**4.** The claim against Western Psych was based on the staff's purported violations of the Pennsylvania Mental Health Procedures Act ("MHPA"), 50 Pa. Cons.Stat. § 7101, *et seq.*

cate of merit." Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042.3") requires that, in a professional liability action, the plaintiff or his attorney file a certification that "an appropriate licensed professional" has stated in writing that a reasonable probability exists that the defendant's conduct was "outside acceptable professional standards[.]" This certification must be filed within 60 days of the filing of the complaint. *Id.* We have held that a similar New Jersey statutory requirement should be applied as substantive state law under the *Erie* Doctrine. *Chamberlain v. Giampapa,* 210 F.3d 154, 158–61 (3d Cir. 2000) (applying the choice of law doctrine from *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). The District Court correctly applied Rule 1042.3 as substantive state law.

We reject Iwanejko contentions that Western Psych waived the defense by failing to raise it in a previous Rule 12(b)(6) motion,[5] and that Rule 1042.3 cannot be retroactively applied to claims which accrued prior to its enactment.[6] We also reject his contention that Rule 1042.3 does not apply to claims premised upon a violation of legal rights as opposed to medical treatment. The District Court correctly found that the text of Rule 1042.3 broadly applies to actions which allege violations of "acceptable professional standards," including those standards codified in statutes such as the MHPA. A critical feature of such an action is that it turns on "questions involving medical judgment." *Ditch v. Waynesboro Hosp.,* 917 A.2d 317, 322 (Pa.Super.2007) (quoting *Grossman v.*

*Barke,* 868 A.2d 561, 570 (Pa.Super.2005)). A complaint "sounds in malpractice" where "the conduct at issue constituted an integral part of the process of rendering medical treatment." *Ditch,* 917 A.2d at 323. The decision as to whether Iwanejko required involuntary commitment necessarily involved a question of medical judgment, and Western Psych's conduct in admitting him constitutes "an integral part of the process of rendering medical treatment." *See id.* Because Iwanejko's claim involves whether his medical treatment violated "acceptable professional standards[,]" Rule 1042.3 applies. The District Court correctly dismissed Iwanejko's claim because of his failure to comply with the Rule.

The orders of the District Court will be affirmed.

---

**5.** Because Iwanejko could still have filed a certificate of merit at the time Western Psych filed its motion to dismiss, the Rule 1042.3 defense was not "then available" to Western Psych under Rule 12(g). Therefore, and even assuming that that defense had to be raised in a Rule 12(b)(6) motion, Western Psych did not waive the defense under Rule 12(g) and was entitled to raise it in a separate motion.

**6.** This contention is without merit. *See Warren v. Folk,* 886 A.2d 305, 309 n. 1 (Pa.Super.2005) (holding that Rule 1042.3 applied to all actions commenced after its effective date of Jan. 27, 2003). Iwanejko filed his complaint in December 2003.