534 A.2d 452

In re ESTATE OF Darrell DORONE.

Appeal of William DORON and Carol Doron, Parents and
Natural Guardians of Darrell Dorone, a/k/a
Darrell Doron.

Supreme Court of Pennsylvania.

Argued April 6, 1987.

Decided Dec. 2, 1987.

William R. Bell, III, Philadelphia, for appellant.

Oldrich Foucek, III, Allentown, for appellee.

Arthur K. Hoffman, Philadelphia, for Amicus—Hosp. Assoc. of Pa.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

McDERMOTT, Justice.

This case comes before us on appeal from a Superior Court affirmation of two orders of the Orphans' Division of the Court of Common Pleas of Lehigh County, 502 A.2d 1271. Those orders appointed a temporary guardian of an unconscious patient for the purpose of consenting to the administration of blood transfusions. The issue before us is whether during the hearings for the appointment of a temporary guardian the hearing judge abused his discretion in failing to receive testimony from the patient's parents, fiancee, or his presiding minister, regarding the patient's religious beliefs.

In responding to this issue we must bear in mind the procedural context which generated it. What we are reviewing is the appropriateness of an order appointing a temporary guardian. The appointment of such a guardian is specifically authorized by statute, the relevant section of which provides as follows.

Notwithstanding the provision of section 5511 of this code (relating to petition and hearing), the court, upon petition and a hearing at which good cause is shown, may appoint a temporary guardian or guardians of the person or estate of a person alleged to be incompetent, when it appears that a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incompetent. The provisions of section 5511 of this code shall be applicable to such proceedings, except that only such notice of the petition and hearing shall be required as shall appear to the court to be feasible in the circumstances, and need not be given at such times or to such persons as would be required by the provisions of section 5511 of this code in a proceeding for the appointment of a guardian. A temporary guardian so appointed for the person or estate of an alleged incompetent shall only have and be subject to such powers, duties and liabilities and serve for such time as the court shall direct in its decree.

20 Pa.C.S. § 5513.[1] A petition for the appointment of a guardian may be made by "any person interested in the alleged incompetent's welfare." 20 Pa.C.S. § 5511(a).[2] As is evident from section 5513 the requirements for a hearing for the appointment of a temporary guardian are limited:

only such notice of the petition and hearing shall be required *as shall appear to the court to be feasible in the circumstances, and need not be given at such times or to such persons as would be required by the provi-*

1. Act of June 30, 1972, P.L. 508, No. 164 § 2.
2. Act of June 30, 1972, P.L. 508, No. 164 § 2, *as amended,* December 10, 1974, P.L. 867, No. 293 § 11.

*sions of section 5511 of their code in a proceeding for
the appointment of a guardian.*[3]

20 Pa.C.S. § 5513 (emphasis added).

Regarding the criterion to be utilized in choosing a temporary guardian, the presiding judge must be convinced that the person chosen will be "interested in the alleged incompetent's welfare," 20 Pa.C.S. § 5511(a), and will act in the best interest of the incompetent. *In re Voshake's Guardianship*, 125 Pa.Super. 98, 189 A. 753 (1937). The ultimate selection of a guardian lies within the sound discretion of the hearing judge, and an appellate court will not reverse that decision except upon an abuse of that discretion. *Heidtman Estate*, 452 Pa. 441, 306 A.2d 878 (1973); *Coulter Estate*, 406 Pa. 402, 178 A.2d 742 (1962); *Voshake's Guardianship, supra.*

With these rules in mind we now turn to an examination of the facts of this case. The patient, Darrell Dorone, a twenty-two (22)[4] year old Jehovah's Witness, was seriously injured in an automobile accident in Warren County, New Jersey, on July 31, 1984. He was unconscious when he was taken to a nearby hospital. There his spleen was removed.[5]

On August 1, 1984, he was transferred by helicopter to the Lehigh Valley Hospital Center (L.V.H.C.). His personal effects were left behind. On arrival he was diagnosed as

**3.** Section 5511 provides, *inter alia,* that:

Notice of the petition and hearing shall be given in such a manner as the court shall direct to the alleged incompetent, to all persons residing within the Commonwealth who are *sui juris* and would be entitled to share in the estate of the alleged incompetent if he died intestate at that time, and to such other parties as the court may direct....

20 Pa.C.S. § 5511(a).

**4.** The record is not clear on respondent's age. The testimony of the surgeon at the August 1st hearing gives it as 22. The opinion of the common pleas court puts it at 24 and a newspaper article appended to the brief of the L.V.H.C. at 23. There is, however, no dispute on his being an adult.

**5.** No blood replacement was required for the spleen removal operation.

suffering from acute subdural hematoma with brain contusion. His treating physician was of the opinion that without an immediate cranial operation Darrell's death was imminent. The hospital authorities sought and were given consent to the operation by William and Carol Doron, Darrell's parents. However, the parents withheld consent to blood transfusions. They based their refusal on religious beliefs.

With respondent on the table awaiting the surgical procedure, his treating physician and the hospital administration petitioned the Orphans' Division of the Court of Common Pleas of Lehigh County for authority to administer blood during the operation, if in the opinion of the surgeon it were to become medically necessary to do so. A hearing was convened and conducted by telephone during which the court received the testimony of the surgeon and the hospital administrator. The appellants did not testify, but their refusal to consent to the administration of blood was presented to the court in the testimony of the surgeon. The court found that the patient would die without the operation; and that even with the operation, in case of complications he would die without a transfusion in any event. The court appointed the hospital administrator as temporary guardian to consent if necessary. The operation proceeded. When during that procedure Mr. Dorone's condition began to deteriorate, blood was given with the guardian's consent.

Two days later, Mr. Dorone was diagnosed as suffering from a blood clot. In the opinion of the surgeon the immediate removal of the clot was necessary. Again permission to operate was sought and granted by Darrell's parents. Again they withheld consent to the administration of blood. The hospital petitioned the court for an emergency hearing, which was conducted by telephone because of the circumstances. During the hearing the surgeon testified that Darrell's condition was critical. It was his opinion that surgical removal of the clot was an immediate necessity, and that delay would cause additional damage to healthy

8

brain tissue because of the swelling and other effects of the clot. His request to administer blood was based on the following factors: the loss of blood generally incident to any surgical procedure; removal of a blood clot makes the patient peculiarly susceptible to hemmorage and without blood replacement, death; and Darrell's blood count was dangerously low going into the operation which, coupled with a pulmonary condition, could have reduced the amount of oxygen going to the brain causing further swelling, coma, irreversible massive brain damage and death. In the opinion of the surgeon these contingencies made blood replacement essential. He testified also that he had informed the parents of the risks of the procedure before obtaining the father's consent, and that he had made both parents aware that a court order would be sought to allow the administration of blood. Under questioning by the court he added that the parents again withheld consent to transfusions because of their religious beliefs.

Following the surgeon's testimony the hospital administrator again agreed to serve as temporary guardian for the purpose of consenting to blood replacement. On this record, the court issued the second order.

The court based its decisions on the fact that withholding blood from the patient would likely result in his death. The court also found that the situation was urgent and there was no time to conduct more expansive hearings. It is true, as appellants contend, that the hearing judge did not take direct testimony from appellants, but this fact was due to the exigency of the situation.[6]

The hearing judge in this case was called upon in two instances to make life or death decisions concerning an individual about whom he previously knew nothing. In both instances the judge was required to make his decision

6. It is beyond dispute that the judge knew the gist of appellant's testimony, i.e., that they did not wish their son to receive blood, and that their son would not want a blood transfusion.

in an extremely short period of time. Under the circumstances the failure to conduct a fuller hearing and/or to elicit testimony from the witnesses cited by appellants cannot be a basis for a finding of error. Under the statute, the judge was required to hold a hearing consistent with what was "feasible in the circumstances,"[7] and we believe he fulfilled that obligation.

 Turning to the ultimate decisions the judge rendered, we feel that they were absolutely required under the facts he had before him. Those facts established that medical intervention, which necessarily included blood transfusions, could preserve Mr. Dorone's life. When evidence of this nature is measured against third party speculation as to what an unconscious patient would want there can be no doubt that medical intervention is required. Indeed, in a situation like the present, where there is an emergency calling for an immediate decision, nothing less than a fully conscious contemporaneous decision *by the patient* will be sufficient to override evidence of medical necessity. *See generally, Application of the President and Directors of Georgetown College, Inc.*, 331 F.2d 1000, *rehearing en banc denied*, 331 F.2d 1010 (D.C.Cir.1964) *cert. denied*, 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964).

Accordingly, for the reasons stated herein, the order of the Superior Court is affirmed.

HUTCHINSON, J., did not participate in the decision of this matter.

ZAPPALA, J., did not participate in the consideration or disposition of this matter.

7. 20 Pa.C.S. § 5513.