**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1414
_____

THOMAS SUTTON,
                                                        Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS; JANE DOE 1, JANE DOE 2; JOHN
DOE 2; JOHN DOE 3; JOHN DOE 4; FAYETTE EMS; J.W.
RUBY MEMORIAL HOSPITAL; JANE DOE 5; JOHN
DOE 5
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(2-22-cv-01030)
District Judge: Hon. Marilyn J. Horan
_____

Submitted under Third Circuit L.A.R. 34.1(a)
February 9, 2024


(Filed: March 26, 2024)

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges*
_____

**OPINION**[1]
_____

---

[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RENDELL, *Circuit Judge.*

Thomas Sutton appeals from an order of the District Court dismissing his amended complaint against Fayette Emergency Medical Services. Sutton sought damages from Fayette EMS for allegedly falsely imprisoning, and assaulting and battering him while transporting him from a local clinic where he sought medical care to a nearby hospital for higher level care. For the reasons that follow, we will affirm.

I.

In March 2022, Sutton, who is "a disabled veteran with various diagnosed medical conditions including . . . chronic obstructive pulmonary disease and a chronically elevated heart rate," arrived at a Fayette County clinic for a medical appointment. Appx029. A nurse practitioner observed Sutton "experiencing a highly elevated heart rate," and advised that he be transported to a hospital for further medical observation and treatment. Appx030. Sutton, however, expressed that he did not wish to go and would not consent to be transported there by ambulance because his medical conditions did "not present emergent medical issues that require[d] immediate hospitalization." Appx030. Still, the nurse practitioner and another medical professional at the clinic would not allow him to leave without addressing his condition and requested transportation for him. In response to this request, two medical technicians from Fayette EMS arrived at the clinic to take him to the hospital by ambulance. According to Sutton, once the EMS technicians arrived, they conspired with the nurse practitioner and the other clinician to "restrain[] and forcefully sedate[] him," to "transport [him] to the hospital against his will and without his consent." Appx031. Once there, hospital staff exercised their own

2

medical judgment and admitted him as a patient. He remained there for two days until he was discharged.

Based on these interactions, Sutton filed a complaint alleging false imprisonment, assault and battery, and civil rights violations against, among others, the Secretary of Veterans Affairs, the clinic, the nurse practitioner, the hospital, the hospital's staff, and Fayette EMS and its technicians. Later, Sutton filed an amended complaint. Fayette EMS responded with a motion to dismiss, which the District Court granted. Sutton filed this appeal.[2]

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343(3), and 1367. We have jurisdiction under 28 U.S.C. § 1291.

We review de novo the District Court's dismissal of Sutton's claims and "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (cleaned up); see also Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 327 (3d Cir. 2022); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015).

---

[2] The District Court observed that Sutton never served the nurse practitioner, the other clinician, or the two Fayette EMS technicians despite his allegations that they conspired to imprison him falsely and to assault and batter him. And the District Court dismissed Sutton's claims against the hospital and its staff without prejudice on the ground of improper venue. Sutton has not appealed that ruling.

III.

On appeal, Sutton urges that in dismissing his amended complaint, the District Court committed three errors. First, he asserts that the District Court erroneously concluded that his claims against Fayette EMS, while characterized as intentional tort claims, in fact sounded in medical malpractice and, therefore, required Sutton to support his allegations with a certificate of merit, which he did not. Second, he contends that the District Court erred when it concluded that even if Sutton had filed a certificate of merit, Fayette EMS "is immune from suit under the" Pennsylvania Emergency Medical Services Act, 35 Pa. Cons. Stat. Ann. § 8151(2). Appx013. Third, he submits that the District Court erred in concluding that he failed to state a claim for punitive damages under 40 Pa. Cons. Stat. Ann. § 1303.505(a)-(b). As we conclude that the District Court correctly dismissed Sutton's amended complaint for failure to file a certificate of merit as required under Pennsylvania Rule of Civil Procedure 1042.3, we need not address the District Court's two alternative and independent grounds for dismissal.

Under Rule 1042.3,

> any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint . . . a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or . . .

4

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3.[3]

The Pennsylvania Supreme Court has explained that "while a plaintiff may at least begin suit against a bevy of health care providers with writs of summons, the certificate of merit requirement will nip unsubstantiated threats in the bud . . . ." Reibenstein v. Barax, 286 A.3d 222, 237 (Pa. 2022). This requirement "signals to the parties and the trial court that the plaintiff is willing to attest to the basis of his malpractice claim; that he is in a position to support the allegations he has made . . . and that resources will not be wasted if additional pleading and discovery take place." Bisher v. Lehigh Valley Health Network, Inc., 265 A.3d 383, 390 (Pa. 2021) (quoting Womer v. Hilliker, 908 A.2d 269, 275 (Pa. 2006)) (internal quotation marks omitted). Claims of ordinary negligence and intentional torts are not subject to this requirement.

While we reject Sutton's argument that his claims are intentional torts and, therefore, need not be supported by a certificate of merit, we note that he has ably summarized the law that distinguishes between intentional torts and medical malpractice. As he recognizes in his brief, "[m]edical malpractice is defined as the 'unwarranted departure from the generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of

---

[3] In this case, Sutton filed neither a certificate of merit certifying that a licensed professional believed that there was a reasonable probability that the EMS technicians' care fell outside acceptable professional standards nor an alternative certificate to certify that expert testimony was unnecessary for prosecution of his claims.

5

professional medical services.'" Appellant's Br. 8 (quoting <u>Ditch v. Waynesboro Hosp.</u>, 917 A.2d 317, 321-22 (Pa. Super. Ct. 2007)) (emphasis added). "[T]o determine whether a claim involves medical malpractice, a court must ask: '(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." Appellant's Br. 8-9 (quoting <u>Waynesboro Hosp.</u>, 917 A.2d at 322).

"[W]here a complaint is predicated upon facts constituting medical treatment, that is, when it involves diagnosis, care and treatment by licensed professionals, the action <u>must be characterized as a professional negligence action</u>." <u>Waynesboro Hosp.</u>, 917 A.2d at 322 (quoting <u>Yee v. Roberts</u>, 878 A.2d 906, 912 (Pa. Super. Ct. 2005)) (internal quotation marks omitted) (emphasis added). Pennsylvania courts, thus, consider the substance of a plaintiff's claims rather than their form to ensure that the plaintiff does not escape the requirements of Rule 1042.3 through artful pleading.

Given that the issue of whether Sutton's claims involve medical malpractice or ordinary intentional torts is central to this case, the District Court correctly began by analyzing Sutton's claims under <u>Waynesboro Hosp.</u> Appx012. And the District Court concluded that both parts of the <u>Waynesboro Hosp.</u> test were satisfied.

First, it explained that "Sutton's claims against Fayette EMS arose in the context of a professional medical relationship" as the EMS technicians "were called to provide professional medical services and transport to the hospital." Appx012-13. Second, the District Court explained that "Sutton's claims against Fayette EMS for false imprisonment, assault and battery . . . are all based upon facts that occurred in response to

6

[his] visit to the VA clinic for medical treatment and which occurred as a result of the medical services provided to him.  Such facts raise questions of medical judgment beyond the realm of common knowledge and experience . . . . Sutton's claims [arose] within the context of emergent medical treatment."  Appx013.  The District Court continued, "Fayette EMS personnel's training and experience, in relation to transporting patients within the context of a medical emergency, is beyond the realm of common knowledge and experience."  Id.

We conclude that the District Court correctly applied the Waynesboro Hosp. test.  First, we agree with the District Court that Sutton's claims against Fayette EMS are based on its technicians' actions taken in the course of their provision of medical services.  The Amended Complaint provides that Sutton's nurse practitioner and another clinician "requested an ambulance to transport the Plaintiff to a hospital due to his elevated heart rate," Appx030, and the technicians "arrived at [the clinic] in their capacities as medical professionals" to do so.  Appx031.  In the course of transporting Sutton to the hospital, the technicians allegedly "restrained [Sutton] and forcefully sedated him."  Appx031.  It is undisputed that these actions, whether medically justified or not, occurred in the course of the technicians' professional relationship with Sutton.  And as Sutton himself observed, "[m]edical malpractice is defined as the unwarranted departure from the generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services."  Appellant's Br. 8 (internal quotation marks and citation omitted).

7

Second, unlike false imprisonment or "assault and battery claims[, which] do not implicate professional negligence in the form of medical malpractice since they do not raise questions of medical judgment beyond the realm of common knowledge and experience[,]" this case involves more than what a layperson may be expected to understand. Appellant's Br. 9 (quoting Brownstein v. Gieda, No. 3:08CV1634, 2009 WL 2513778, at *4 (M.D. Pa. Aug. 13, 2009)) (internal quotation marks omitted). Without the assistance of specialized knowledge of EMS technician training and standards, the Court cannot evaluate the propriety of the technicians' actions forming the crux of Sutton's claims in this case. Would the technicians have been permitted to decline the clinic's request to transport Sutton despite the judgment of independent medical providers that he was suffering from "a highly elevated heart rate?" Appx030. Was restraining Sutton medically necessary to transport him in an ambulance? See, e.g., Waynesboro Hosp., 917 A.2d at 323 (concluding that determining the propriety of a medical staff member's decision not to restrain a stroke patient during transfer from an emergency room to a hospital room required specialized knowledge and experience). Similarly, was administering a sedative to Sutton medically necessary given his elevated heart rate and other "diagnosed medical conditions including, but not limited to, chronic obstructive pulmonary disease?" Appx029. It is evident on these facts that Sutton's claims raise questions of medical judgment beyond the realm of common knowledge and experience.

Although the Dissent observes that Sutton averred certain "intentional" actions these actions sounded in medical malpractice and, thus, he was required to file a

8

certificate of merit to "signal[] to the parties and the trial court that . . . he [wa]s in a position to support [his] allegations . . . and that resources w[ould] not be wasted if additional pleading and discovery [were to] take place." <u>Bisher</u>, 265 A.3d at 3690 (internal quotation marks and citation omitted).

IV.

For these reasons, we will affirm the District Court's Order.

*Thomas Sutton v. Secretary United States Department of Veterans Aff., et al.*, No. 23-1414

—————————

HARDIMAN, *Circuit Judge*, dissenting.

Under Pennsylvania law, "a claim based upon a lack of informed consent involves a battery committed upon a patient by a physician, an action which is distinct from a claim of a consented-to, but negligently performed, medical treatment." *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 748–49 (Pa. 2002). *Montgomery* involved a surgical procedure and Sutton's case does not. But *Montgomery*'s reasoning applies here because Sutton has a well-established common law right to refuse medical treatment. *See In re Fiori*, 673 A.2d 905, 909–10 (Pa. 1996). And though medical emergencies can obviate the need for consent, *see id.* at 910, a patient's "clear directive" refusing treatment can "override evidence of medical necessity," *In re Duran*, 769 A.2d 497, 504–05 (Pa. Super. Ct. 2001) (citing *In re Estate of Dorone*, 534 A.2d 452, 455 (Pa. 1987)).

Sutton alleges intentional torts, not mere negligence. He accuses Fayette EMS of sedating him and transporting him to a hospital without his consent. Such claims do not require a certificate of merit. *See* Pa. R. Civ. P. 1042.3(a); *Montgomery*, 798 A.2d at 749. These claims also fall outside the ambit of immunity under Pennsylvania's Emergency Medical Services Act and could support punitive damages. *See* 35 Pa. C.S.A. § 8151(2); Pa. Cons. Stat. § 1303.505(a)–(b).

For these reasons, I would vacate the order of the District Court dismissing Sutton's claims against Fayette EMS and remand for further proceedings.

1