J-S42001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: L.L.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF WELLSPAN HEALTH AND | : | |
| L.L.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1420 MDA 2025 |

Appeal from the Order Entered September 22, 2025
In the Court of Common Pleas of York County Orphans' Court Division at
No(s):  6725-0913

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY OLSON, J.:        **FILED: NOVEMBER 14, 2025**

Appellant, WellSpan Health, appeals from the order entered on September 22, 2025, which denied Appellant's Petition for the Appointment of an Emergency Guardian of the Person.  We vacate and remand.

On May 6, 2025, Appellant filed a Petition for Adjudication of Incapacity and the Appointment of an Emergency Plenary Guardian as to L.L.H., pursuant to 20 Pa.C.S.A. § 5513 (hereinafter "Appellant's First Emergency Petition").[1]

---

[1] Section 5513 is entitled "emergency guardian" and provides, in relevant part:

> Notwithstanding the provisions of section 5511 (relating to petition and hearing; independent evaluation), the court, upon petition and a hearing at which clear and convincing evidence is shown, may appoint an emergency guardian or guardians of the person or estate of a person alleged to be incapacitated, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable

*(Footnote Continued Next Page)*

Within Appellant's First Emergency Petition, Appellant averred that it is providing residential and health care services to L.L.H. Appellant's First Emergency Petition, 5/6/25, at 2. As it averred, L.L.H. is 75 years old and "lacks the capacity to meet his own needs or to make and communicate any decisions for himself." *Id.* at 1-2. Specifically, Appellant averred that L.L.H. suffers from limiting physical conditions, including "dysphasia, hypernatremia, peripheral edema and a history of mitral valve repairs" and also suffers from the mental conditions of "bipolar 1 manic and dysphagia." *Id.* at 2.

Appellant alleged that L.L.H.'s "physical and mental conditions . . . are unlikely to improve without [electroconvulsive treatment ("ECT")]." *Id.* at 3. Moreover, even though L.L.H. appointed his wife, B.H. (hereinafter "L.L.H.'s Wife"), as his power of attorney, this appointment did not grant L.L.H.'s Wife the power to consent to the necessary ECT, as that authority was not specifically included in the power of attorney. *See* Appellant's Durable Healthcare Power of Attorney, 11/24/21, at 1-11; *see also* 20 Pa.C.S.A. § 5836(c) ("[u]nless specifically included in a mental health power of attorney, the agent shall not have the power to consent to [ECT] or to experimental procedures or research"). In order to provide this necessary treatment,

---

harm to the person or estate of the alleged incapacitated person. . . . An emergency order appointing an emergency guardian of the estate shall not exceed 30 days. After 30 days, a full guardianship proceeding must be initiated pursuant to section 5511.

20 Pa.C.S.A. § 5513.

Appellant sought a court order, declaring that L.L.H. was an incapacitated person and appointing an emergency plenary guardian of his person. Appellant's First Emergency Petition, 5/6/25, at 4.

The orphans' court held a hearing on Appellant's petition and, on May 9, 2025, the orphans' court entered an order declaring: "[L.L.H.] is a totally incapacitated person and [L.L.H.'s Wife] is appointed emergency plenary guardian of the person of [L.L.H.] in order to authorize [ECT]." Orphans' Court Order, 5/9/25, at 2. The order further declared that the emergency guardianship "shall remain in effect until the earlier of [30] days . . . or the time of the final guardianship hearing," which the orphans' court scheduled for June 3, 2025. *Id.*

On May 13, 2025, Appellant filed a Petition for Adjudication of Incapacity and the Appointment of a Plenary Guardian of the Person, in accordance with 20 Pa.C.S.A. § 5511.[2] This petition repeated the allegations and averments

---

[2] ***Compare*** 20 Pa.C.S.A. § 5511(a) ("The court, upon petition and hearing and upon the presentation of clear and convincing evidence, **may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate**") (emphasis added) ***with*** 20 Pa.C.S.A. § 5513 ("Notwithstanding the provisions of section 5511 (relating to petition and hearing; independent evaluation), the court, upon petition and a hearing at which clear and convincing evidence is shown, may appoint an **emergency guardian** or guardians of the person or estate **of a person alleged to be incapacitated**, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incapacitated person. . . . **An emergency order appointing an emergency guardian of the estate shall not exceed 30 days. After 30 days, a full**
*(Footnote Continued Next Page)*

- 3 -

contained in Appellant's First Emergency Petition and requested that the orphans' court find L.L.H. to be incapacitated and appoint a plenary guardian over his person. Appellant's Petition for Adjudication of Incapacity and the Appointment of a Plenary Guardian of the Person, 5/13/25, at 1-4.

In response to Appellant's May 13, 2025 petition, the orphans' court entered an order on June 12, 2025, which appointed L.L.H.'s Wife as the limited guardian of L.L.H. and specifically granted L.L.H.'s Wife the power to "consent to mental health treatment, including [ECT], that is recommended by [L.L.H.'s] treatment team during the term of this appointment." Orphans' Court Order, 6/12/25, at 1-2. Nevertheless, the orphans' court's June 12, 2025 order was temporary and declared that L.L.H.'s Wife's appointment as limited guardian of L.L.H.'s person "shall expire in [30] days, unless further proceedings are held and further order of court." ***Id.***

On September 17, 2025 – or, two months after the orphans' court's June 12, 2025 order expired by its own terms – Appellant filed the current Petition for the Appointment of an Emergency Plenary Guardian over L.L.H., in accordance with 20 Pa.C.S.A. § 5513 (hereinafter "Appellant's Current Emergency Petition"). Within this petition, Appellant alleged that L.L.H. was again in need of ECT. Thus, Appellant requested that the orphans' court appoint an emergency guardian over L.L.H.'s person, to enable the guardian

_____

**guardianship proceeding must be initiated pursuant to section 5511**") (emphasis added).

- 4 -

to authorize the necessary ECT for L.L.H. Appellant's Current Emergency Petition, 9/17/25, at 1-4.

On September 22, 2025, the orphans' court held a hearing on Appellant's Current Emergency Petition.[3] During the hearing, the orphans' court first heard from L.L.H.'s psychiatrist at WellSpan, Dr. Alfred P. Sylvester. *See* N.T. Hearing, 9/22/25, at 4. Dr. Sylvester testified that L.L.H. currently suffers from "bipolar disorder Type I manic with psychotic features." *Id.* at 6. As Dr. Sylvester testified:

> [L.L.H.] suffered with bipolar disorder for many, many, many, years. We know him well through numerous, numerous hospitalizations. As he has gotten older and more frail, his response to medications for the condition has vanished. In fact, he had been with us [at WellSpan since] last May and June, and it was determined at that time that because he wasn't responding to medications, that we would proceed with [ECT]. And he received, after obtaining an emergency guardianship[], he received a total of 13 [ECT] sessions with resolution of the mania. There was some consideration for continuing ECT over a longer period of time. However, he was doing well, and I believe he may have been sent to a nursing home.
>
> He re-presented to us unfortunately in a regressed state for this admission having relapsed. He was admitted to our facility this admission September [9, 2025] and is presenting in a similar fashion. He is manic. He is agitated. He is easily irritated, and gets physically aggressive. He is irrational and unreasonable. There are times he will not take his

---

[3] L.L.H.'s attorney was present during the September 22, 2025 hearing. L.L.H., however, did not attend the hearing, as L.L.H.'s psychiatrist, Dr. Alfred Sylvester, believed that "[a]ttendance [at the hearing] would cause unnecessary distress [and] further detriment to [L.L.H.'s] mental health." Letter from Dr. Sylvester to the Orphans' Court, 9/17/25, at 1.

medications or cooperate with nursing care. And at this time, the recommendation is to proceed with [ECT].

*Id.* at 7-8.

Dr. Sylvester testified that L.L.H.'s prior course of 13 ECT sessions resolved L.L.H.'s mania and returned L.L.H. "to his baseline level of functioning." *Id.* at 8. Dr. Sylvester opined that a further course of ECT would again resolve L.L.H.'s mania and bring him back to his baseline level of functioning. *Id.*

As Dr. Sylvester testified, L.L.H. suffers from "treatment resistant mania." *Id.* at 8-9. Dr. Sylvester testified:

> With regards to treating treatment resistant mania, we essentially have two options, medications and [ECT]. [L.L.H.] is currently receiving medications. Unfortunately, again, [he is] not having much of a response. In fact, almost on a daily basis [L.L.H.] requires extra medications in the form of injections because he will not take them orally.

*Id.* at 9.

Dr. Sylvester testified that, since L.L.H. is "not having much of a response" to his medication, there is now "no less intrusive method to treat [L.L.H.'s] symptoms than [ECT]" – and WellSpan cannot perform ECT without the appointment of a guardian. *Id.* at 9-12. Further, Dr. Sylvester testified that it is "urgent" for L.L.H. to receive ECT:

> [L.L.H. has] been with us since [September 9, 2025] and there's been no response with the medications. In fact, we are having to give him extra medications to try and keep him from being aggressive towards others, which increases his risk for side effects. He already has Parkinson's symptoms from his baseline medications. So I would rather not give

him more medication if I can help it. So I'm really trying hard
to make sure we can start [ECT] as soon as possible.

*Id.* at 12-13.

At the close of Dr. Sylvester's testimony, the orphans' court informed

Appellant's counsel:

Counsel, you can go through [your other witnesses], but I'm
going to deny your petition. You did not pursue a final
guardianship proceeding after I granted the last one, which
is what's required by the statute. So, I mean, you can
present your evidence, but I'm not going to grant another
emergency guardianship.

*Id.* at 15.

As the orphans' court clarified: "Okay. I'm not appointing another

emergency guardian is what I'm telling you. If [L.L.H.'s Wife] wanted to be a

plenary guardian, she needed to petition [the court] at the conclusion of the"

prior, June 12, 2025, court order, which expired after 30 days. *Id.* at 16.

The orphans' court denied Appellant's Current Emergency Petition on

September 22, 2025. Within its order, the orphans' court declared:

although there is sufficient evidence to show that [L.L.H.]
continues to be an incapacitated person, the court does not
find that irreparable harm would occur by denying this
request, particularly since [L.L.H.'s Wife] has failed to pursue
a plenary guardianship proceeding as required by statute.

Orphans' Court Order, 9/22/25, at 1; *see also* Orphans' Court Opinion,

10/31/25, at 4 (reasoning: "[t]he [orphans' court] did not find that

irreparable harm would ensue if the appointment of an emergency guardian

was not made . . . [because] Appellant has not made any request for

re-appointment of the limited guardian of the person or requested a review

hearing of the prior finding of incapacity. Such action would have afforded the court time to schedule an appropriate hearing for which [L.L.H.] would have been afforded sufficient notice").

Appellant filed a timely notice of appeal. While Appellant raises a number of claims on appeal, Appellant's claims center around the following, overarching contentions: 1) the orphans' court erred as matter of law when it concluded that Appellant was not permitted to file a petition for an emergency guardianship under Section 5513 and; 2) the orphans' court erred as a matter of law when it misconstrued the term "irreparable harm" in Section 5513. **See** Appellant's Brief at 20-39. We agree with Appellant. Therefore, we vacate the orphans' court's order and remand.

As we have held:

> The appointment of a guardian lies within the discretion of the trial court and will be overturned only upon an abuse of discretion. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

**In re Duran**, 769 A.2d 497, 506 (Pa. Super. 2001) (quotation marks and citations omitted). "Importantly, . . . an error of law constitutes an abuse of discretion." **Interest of A.M.**, 343 A.3d 341, 348 (Pa. Super. 2025) (quotation marks and citations omitted).

Appellant petitioned for the appointment of an emergency guardian, in accordance with 20 Pa.C.S.A. § 5513. Section 5513, entitled "emergency guardian," declares:

> Notwithstanding the provisions of section 5511 (relating to petition and hearing; independent evaluation), the court, upon petition and a hearing at which clear and convincing evidence is shown, may appoint an emergency guardian or guardians of the person or estate of a person alleged to be incapacitated, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incapacitated person. The provisions of section 5511, including those relating to counsel, shall be applicable to such proceedings, except when the court has found that it is not feasible in the circumstances. An emergency guardian so appointed for the person or estate of an alleged incapacitated person shall only have and be subject to such powers, duties and liabilities and serve for such time as the court shall direct in its decree. An emergency order appointing an emergency guardian of the person may be in effect for up to 72 hours. If the emergency continues, then the emergency order may be extended for no more than 20 days from the expiration of the initial emergency order. After expiration of the emergency order or any extension, a full guardianship proceeding must be initiated pursuant to section 5511. The court may also appoint an emergency guardian of the person pursuant to this section for an alleged incapacitated person who is present in this Commonwealth but is domiciled outside of this Commonwealth, regardless of whether the alleged incapacitated person has property in this Commonwealth. An emergency order appointing an emergency guardian of the estate shall not exceed 30 days. After 30 days, a full guardianship proceeding must be initiated pursuant to section 5511.

20 Pa.C.S.A. § 5513.

Here, the orphans' court essentially faults Appellant for filing a petition for the appointment of an emergency guardian, under Section 5513 – rather

- 9 -

than filing a petition for a full guardianship proceeding, in accordance with Section 5511. **See** N.T. Hearing, 9/22/25, at 15; Orphans' Court Order, 9/22/25, at 1; Orphans' Court Opinion, 10/31/25, at 4. The orphans' court further concluded that Appellant failed to establish that "irreparable harm would ensue if the appointment of an emergency guardian was not made . . . [because] Appellant has not made any request for re-appointment of the limited guardian of the person or requested a review hearing of the prior finding of incapacity." **See** Orphans' Court Opinion, 10/31/25, at 4. We respectfully disagree with the orphans' court's conclusions.

Appellant initially sought the appointment of an emergency guardian under Section 5513 in May 2025. The express purpose of this petition was to obtain the appointment of a guardian who could consent to the administration of ECT for L.L.H. **See** Appellant's First Emergency Petition, 5/6/25, at 3; **see also** 20 Pa.C.S.A. § 5836(c) ("[u]nless specifically included in a mental health power of attorney, the agent shall not have the power to consent to [ECT] or to experimental procedures or research"). The orphans' court granted Appellant's Section 5513 petition on May 9, 2025 and appointed L.L.H.'s Wife as his emergency guardian, granting her the ability to consent to ECT for L.L.H. Orphans' Court Order, 5/9/25, at 2.

Due to the limited nature of this emergency guardianship, on May 13, 2025, Appellant filed a petition under Section 5511, for the appointment of a plenary guardian for L.L.H. The orphans' court, however, only granted a limited, temporary guardianship for L.L.H. Specifically, on June 12, 2025, the

orphans' court ordered that L.L.H.'s Wife be appointed his limited guardian and could consent to ECT, but that this appointment "shall expire in [30] days, unless further proceedings are held and further order of court." Orphans' Court Order, 6/12/25, at 1-2.

As Dr. Sylvester explained during the September 22, 2025 hearing, L.L.H. received 13 ECT sessions while L.L.H.'s Wife was his guardian and, during this time, L.L.H.'s mania resolved and he was able to be transferred to a nursing home. *See* N.T. Hearing, 9/22/25, at 7-8. Thus, according to Dr. Sylvester, the need for a guardian over L.L.H.'s person ended at the expiration of the orphans' court's June 12, 2025 order. *See id.*

Dr. Sylvester testified that a new emergency arose on September 9, 2025, when L.L.H.'s treatment-resistant mania returned and L.L.H. "urgently" required ECT. *Id.* at 7-13. As this was a **new emergency** which required urgency, Appellant was entitled to petition for an emergency guardian under Section 5513 – and was not required to utilize the slower, and more deliberative process delineated in Section 5511. Indeed, Section 5513 exists to provide an avenue for relief in this type of emergency situation. *See In re Estate of Dorone*, 534 A.2d 452 (Pa. 1987) (under a prior-version of Section 5513, where the orphans' court appointed a temporary guardian of an unconscious patient for the purpose of consenting to the administration of blood transfusions, the orphans' court did not err when it truncated the hearing, due to the life-or-death nature of the decision). We thus conclude that the orphans' court erred when it held that Appellant was not permitted to

file a petition for the appointment of an emergency guardian, under Section 5513. As this was a new emergency, Appellant was entitled to utilize the emergency procedures authorized by Section 5513.

We also conclude that the trial court erred when it held that Appellant failed to establish that "irreparable harm would ensue if the appointment of an emergency guardian was not made . . . [because] Appellant has not made any request for re-appointment of the limited guardian of the person or requested a review hearing of the prior finding of incapacity." **See** Orphans' Court Opinion, 10/31/25, at 4.

In relevant part, Section 5513 declares: "the court, upon petition and a hearing at which clear and convincing evidence is shown, may appoint an emergency guardian or guardians of the person or estate of a person alleged to be incapacitated, when it appears that the person lacks capacity, is in need of a guardian and a failure to make such appointment will result in irreparable harm to the person or estate of the alleged incapacitated person." 20 Pa.C.S.A. § 5513. Black's Law Dictionary declares that the term "irreparable harm" is synonymous with the term "irreparable injury." It defines the latter term as: "[a]n injury that cannot be adequately measured or compensated by money and is therefore often considered remediable by injunction." Black's Law Dictionary at 801 (8th ed. 2004).

According to the orphans' court, Appellant failed to establish that "irreparable harm would ensue if the appointment of an emergency guardian was not made . . . [because] Appellant has not made any request for

- 12 -

re-appointment of the limited guardian of the person or requested a review hearing of the prior finding of incapacity." **See** Orphans' Court Opinion, 10/31/25, at 4. We conclude that the orphans' court committed an error of law when it determined that Appellant's failure to request the re-appointment of a limited guardian or a review hearing of the prior finding of incapacity precludes a finding of irreparable harm.

At the outset, the orphans' court's June 12, 2025 order, which appointed L.L.H.'s Wife as the limited guardian of L.L.H.'s person, expired, by its terms, on July 11, 2025 – which was 30 days after its entry. **See** Orphans' Court Order, 6/12/25, at 1-2. L.L.H.'s new emergency did not materialize until September 9, 2025. **See** N.T. Hearing, 9/22/25, at 7-8. Yet, since the June 12, 2025 order had already expired, Appellant could not amend or revive this order. Appellant's failure to attempt this futile act simply does not vitiate the evidence Appellant presented during the September 22, 2025 hearing, which supported a finding that L.L.H. would suffer irreparable harm if an emergency guardian were not appointed over his person. **See id.** at 4-13. More specifically, the inquiry to be made under Section 5513 is whether L.L.H. will suffer irreparable harm if a guardian is not appointed for the purpose of authorizing ECT. The testimony of Dr. Sylvester clearly supports a finding that L.L.H. will be physically and psychologically harmed if ECT is not provided. Moreover, we fail to see how Appellant's failure to "request[] a review hearing of the prior finding of incapacity" is relevant to the appointment of an

emergency guardian, at this time, who can consent to ECT. **See** Orphans' Court Opinion, 10/31/25, at 4.

Here, we conclude that the orphans' court committed an error of law when it incorrectly applied the standard for making a finding of irreparable harm under Section 5513. We thus vacate the orphans' court's order and remand for further proceedings.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2025